# NO. 24-3596

# In the
# United States Court of Appeals
# for the Eighth Circuit

Anthony Fortner,

*Appellant,*

v.

B. Eischen, Warden Bureau of Prisons,

*Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

_____

**Brief of Appellant**

_____

| | |
|---|---|
| Ian S. Birrell (#0396379) | Lucas Driasey |
| BIRRELL LAW FIRM PLLC | Ana Voss |
| 333 South 7th Street | Assistant U.S. Attorneys |
| Suite 3020 | 600 U.S. Courthouse |
| Minneapolis, MN 55402 | 300 South Fourth Street |
| (952) 356-2393 | Minneapolis, MN 55415 |
| ian@birrell.law | |
| *Attorney for Appellant* | *Attorneys for Appellee* |

Appellate Case: 24-3596    Page: 1    Date Filed: 05/28/2025 Entry ID: 5521069

# Summary of the Case

Appellant Anthony Fortner filed a petition for habeas review in the District of Minnesota under 28 U.S.C. § 2241. The basis of his claim was that the Bureau of Prisons had misinterpreted the First Step Act. Due to that misinterpretation, the BOP would not grant Mr. Fortner a "prerelease custody" transfer to home confinement or to a Residential Reentry Facility—as it would be required to do—but instead would keep him inside the walls of the prison.

The District Court erroneously determined that a habeas petition was not the appropriate vehicle for Mr. Fortner's claim. It thus dismissed the claim.

Mr. Fortner appeals—he requests this Court reverse the district court and remand with a ruling that his habeas claim is jurisdictionally appropriate.

Appellant requests 15 minutes of oral argument.

Appellate Case: 24-3596    Page: 2    Date Filed: 05/28/2025 Entry ID: 5521069

# Table of Contents

Cover ...............................................................................................................1

Summary of the Case ....................................................................................... i

Table of Contents ........................................................................................... ii

Table of Authorities........................................................................................ iv

Jurisdictional Statement ..................................................................................1

Statement of the Issue .....................................................................................3

Statement of the Case......................................................................................4

    I.    Mr. Fortner's Sentencing and Imprisonment..................................................4

    II.   Mr. Fortner's Habeas Petition...........................................................................5

    III.  The District Court's Rulings and Mr. Fortner's Timely Appeal.....................6

Summary of the Argument..............................................................................8

Argument.........................................................................................................10

    I.    Standard of Review.................................................................................10

    II.   Overview of the First Step Act, and the Non-Discretionary Obligations it Placed on the Bureau of Prisons.................................................................10

    III.  The Pre-First Step Act Law Regarding Habeas Petitions.............................12

    IV.  Various Courts' assessments of whether BOP refusals to transfer to prerelease custody are cognizable under Habeas .................................................18

        a.   The District Court's holding Mr. Fortner cannot proceed by habeas.........19

        b.   Implicitly conflicting rulings otherwise reached in the District of Minnesota.................................................................................................21

        c.   Conflicting Interpretation elsewhere in the Eighth Circuit.......................22

        d. Conflicting Interpretations in the other Circuits .........................................23

        e.   A clear set of laws is required .................................................................28

    V.   The Court should find Mr. Fortner's habeas petition jurisdictionally appropriate .................................................................................................29

ii

Appellate Case: 24-3596    Page: 3    Date Filed: 05/28/2025 Entry ID: 5521069

a.   The text of Supreme Court precedent and the History of habeas mandate Mr. Fortner proceeding via habeas...................................................................29

b. The Earned Time Credits (ETCs) at Issue Are Directly Analogous to "Good-Time" Credits, Which Are Exclusively Reviewable Under Habeas Corpus ....33

c. The "Quantum Change" Argument Persuasively Supports Habeas Jurisdiction Over Mr. Fortner's Claim...........................................................36

d. Legislative Purpose and Judicial Economy Both Strongly Favor Resolving Mr. Fortner's Claim Via Habeas Corpus...........................................................40

e. Equal Protection Principles Require Allowing Mr. Fortner's Claim to Proceed via Habeas Corpus...................................................................42

Conclusion ..........................................................................................................46

Certificate of Compliance ...................................................................................47

Certificate of Service ..........................................................................................48

Appellate Case: 24-3596   Page: 4   Date Filed: 05/28/2025 Entry ID: 5521069

# Table of Authorities

**Cases**

*Bania v. Roal*, No. 11-cv-925 (SRN/TNL), 2011 U.S. Dist. LEXIS 155178 (D. Minn. Oct. 24, 2011).................................................................................38

*Benke v. Norris*, No. 99-4179, 2000 U.S. App. LEXIS 22989 (8th Cir. Sep. 13, 2000).................................................................................................17

*Brenneman v. Salmonson*, 22-cv-7-RWS-JBB, 2025 U.S. Dist. LEXIS 56851 (E.D. Tex. Feb. 25, 2025)................................................................. 27, 29

*Cicchiiello v. Warden Danbury FCI*, No. 24-cv-1240-VAB, 2025 U.S. Dist. LEXIS 22322 (D. Conn. Feb. 7, 2025)................................................. 26, 29

*Cook v. Hanberry*, 592 F.2d 248 (5th Cir. 1979) .......................................16

*Dale v. Ziegler,* No. 10-cv-87, 2011 U.S. Dist. LEXIS 37603 (N.D. W. V. Jan. 18, 2011) ...............................................................................................38

*Davis v. Emmerich*, No. 24-cv-441-JDP, 2024 U.S. Dist. LEXIS 208253 (W.D. Wis. Nov. 15, 2024)................................................................................38

*Domina v. Van Pelt*, 235 F.3d 1091, 1099 (8th Cir. 2000) ........................45

*Fiorito v. Entzel*, 829 F.App'x 192, 193 (9th Cir. 2020)............................39

*Flowers v. City of Minneapolis*, 558 F.3d 794, 799 (8th Cir. 2009) .........45

*Ganim v. Fed. Bureau of Prisons*, 235 F. App'x 882 (3d Cir. 2007)..........39

*Gonzalez-Fuentes v. Molina*, 607 F.3d 864 (1st Cir. 2010) ......................39

*Graham v. Broglin*, 922 F.2d 379 (7th Cir. 1991).....................................39

*Heck v. Humphrey*, 512 U.S. 477 (1994) ...................................................15

*Jobin v. Warden, FCI-Mendota*, 23-cv-01700-WBS-SKO, 2024 U.S. Dist. LEXIS 60046 (E.D. Cal. Apr. 1, 2024)...............................................25

*Johnson v. Birkholz*, 2022 LEXIS 139364, 21-cv-2017-PJS (D. Minn. Aug. 5, 2022).............................................................................................3, 20

*Jones v. Cunningham*, 371 U.S. 236 (1963) ........................... 14, 15, 32, 35

*Jones v. Engleman*, No. 22-cv-05292-MCS-GJS, 2022 U.S. Dist. LEXIS 185029 (C.D. Cal. Oct. 7, 2022)........................................................11, 24

*Kruger v. Erickson*, 77 F.3d 1071 (8th Cir. 1996).....................................15

*Mannino v. Garrett*, No. 25-cv-00010-JM-PSH, 2025 U.S. Dist. LEXIS 83200 (E.D. Ark. Apr. 9, 2025) ..........................................................23

*Marbury v. Madison*, 5 U.S. 137, 153 (1803)...................................... 29, 42

Appellate Case: 24-3596     Page: 5     Date Filed: 05/28/2025 Entry ID: 5521069

*Miller v. Whitehead*, 527 F.3d 752 (8th Cir. 2007) ..................................................17

*Misenar v. McKinna*, No. 99-1556, 2000 U.S. App. LEXIS 5213 (10th Cir. Mar. 28, 2000) ................................................................................................................39

*Mohammed v. Stover*, 23-CV-757 (SVN), 2024 U.S. Dist. LEXIS 73508 (D. Conn. Apr. 23, 2024) ...........................................................................................26

*O'Bryan v. Cox*, 21-cv-4052, U.S. Dist. LEXIS 167316 (D.S.D. Sep. 1, 2021) .....22

*Pettersen v. Clarke*, 1996 U.S. App. LEXIS 8273 (8th Cir. Apr. 18, 1996) ...........17

*Plyler v. Moore*, 129 F.3d 728, 733 (4th Cir. 1997) ................................................39

*Pollock v. Marske*, 2022 U.S. App. LEXIS 11190 (8th Cir. Apr. 26, 2022) ...........17

*Preiser v. Rodriguez*, 411 U.S. 475 (1973) ...................................................... passim

*Rodriquez v. Warden of LSCI-Allenwood*, 24-cv-920, 2024 U.S. Dist. LEXIS 140499 (M.D. Pa. Aug. 7, 2024) .......................................................................28

*Silva v. Paul*, No. 18-cv-2177-ECT, 2019 U.S. Dist. LEXIS 21699 (D. Minn. Jan. 7, 2019) .............................................................................................. 21, 22, 36

*Simpson v. Bayliss*, No. 5:24-CV-154, 2024 U.S. Dist. LEXIS 189100 (N.D.W. Va. Oct. 17, 2024) ...........................................................................................28

*Sims v. Rosalez*, 24-cv-1222-RP, 2025 U.S. Dist. LEXIS 87924 (W.D. Tex. May 8, 2025) ............................................................................................... 27, 28

*Spencer v. Haynes*, 774 F.3d 467 (8th Cir. 2014) ................................................3, 16

*Terrell v. United States*, 564 F.3d 442 (6th Cir. 2009) ...........................................39

*Tong v. Derr*, 22-cv-543-JAO-WRP, 2023 U.S.Dist. LEXIS 103183 (D. Haw. June 14, 2024) ....................................................................................................25

*Williams v. United States Dist. Court for the Dist. of Newark*, No. 11-884 (WJM), 2011 U.S. Dist. LEXIS 116913 (D.N.J. Oct. 7, 2011) .........................................38

*Wilson v. Lockhart*, 949 F.2d 1051 (8th Cir. 1991) ................................................17

*Woodley v. Warden*, 24-cv-3053-JWL, 2024 U.S. Dist. LEXIS 87521 (D. Kan. May 15, 2024) ................................................................................................. passim

**Statutes**

18 U.S.C. § 3624 ................................................................................................11, 20

18 U.S.C. § 3632 ..........................................................................................10, 11, 40

28 U.S.C. § 1291 .......................................................................................................2

28 U.S.C. § 2241 .............................................................................................. passim

28 U.S.C. § 2254 ....................................................................................................13

42 U.S.C. § 1983 .......................................................................................... 13, 14, 15, 30

v

## Other Authorities

U.S. Const. Amend. V ...................................................................................9

Appellate Case: 24-3596     Page: 7     Date Filed: 05/28/2025 Entry ID: 5521069

# Jurisdictional Statement

Mr. Fortner was sentenced to a federal term of imprisonment. He was designated to serve the last part of his incarcerated sentence at FPC Duluth (within the District of Minnesota).

While at FPC Duluth, Mr. Fortner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. He alleged the Bureau of Prisons had misapplied the First Step Act (FSA) to his incarcerated time by failing to award him FSA time credits that he had properly earned. The net effect of this failure, Mr. Fortner alleged, was that he should have been serving his sentence outside the walls of a BOP prison (via one of the two methods of prerelease custody—either a halfway house or home confinement) but was instead serving his sentence within the walls of the federal prison.

Mr. Fortner, as 28 U.S.C. § 2241 directed, sought review in the District of Minnesota, where he was incarcerated. That statute provided jurisdiction.

The District Court, however, ruled that habeas was not the proper avenue for Mr. Fortner to make this challenge. The District Court issued a judgment dismissing Mr. Fortner's petition for writ of habeas corpus on December 2, 2024. This was a final order or judgment that disposes of all parties' claims.

Mr. Fortner timely appealed, filing a notice of appeal as required by Rules 3 and 4 of the Federal Rules of Appellate Procedure. The District Court docketed his

1

Appellate Case: 24-3596    Page: 8    Date Filed: 05/28/2025 Entry ID: 5521069

timely notice of appeal on December 20, 2024. Jurisdiction was afforded by 28 U.S.C. §§ 1291 et seq., which establish that Courts of Appeals have jurisdiction from final decisions of District Courts.

Appellate Case: 24-3596    Page: 9    Date Filed: 05/28/2025 Entry ID: 5521069

# Statement of the Issue

Did the District Court have jurisdiction to consider Mr. Fortner's petition for relief via a writ of habeas corpus under 28 U.S.C. § 2241 where Mr. Fortner claimed the Bureau of Prisons violated the First Step Act by refusing to permit him to serve the last part of his sentence either at a residential re-entry facility or on home confinement and instead kept him incarcerated.

The District Court held it did not have jurisdiction.

Most Apposite Authorities:

- *Preiser v. Rodriguez*, 411 U.S. 475 (1973)
- *Spencer v. Haynes*, 774 F.3d 467 (8th Cir. 2014);
- *Woodley v. Warden*, 24-cv-3053-JWL, 2024 U.S. Dist. LEXIS 87521 (D. Kan. May 15, 2024)
- *Johnson v. Birkholz*, 2022 LEXIS 139364, 21-cv-2017-PJS (D. Minn. Aug. 5, 2022).

3

Appellate Case: 24-3596     Page: 10     Date Filed: 05/28/2025 Entry ID: 5521069

# Statement of the Case

## I.     Mr. Fortner's Sentencing and Imprisonment

The petitioner-appellant, Anthony Fortner, was sentenced in the Western District of Michigan by the Honorable Paul L. Maloney to a 168-month term of imprisonment in the Western District of Michigan District Court. Mr. Fortner thus was held in the custody of the Bureau of Prisons.

Mr. Fortner began serving his sentence in Ohio. He was transferred to Texas for what ended up being—due to the COVID-19 pandemic partial lockdowns—a 543-day stay. There, he worked full-time in the kitchen and engaged in productive activities as allowed by the BOP (and as defined by the First Step Act). Mr. Fortner was returned to Ohio and, when he qualified for camp status, transferred to FPC-Duluth in Minnesota.

Under the First Step Act, prisoners who participate in "evidence-based recidivism reduction programs" ("EBRRs") receive benefits. Among the benefits a prisoner receives is they are awarded "Earned Time Credits" ("ETCs"). The first 365 ETCs a prisoner receives are applied to a reduction in their sentence. If a prisoner earns more than 365 ETCs, the BOP is *required* to apply those credits to "prerelease custody." The BOP has only two options for this—either (1) transferring the prisoner to a "residential reentry center" ("RRC", or, colloquially, a

4

halfway house); or (2) transferring the prisoner to home confinement. Under either option, the prisoner remains in BOP custody but outside the walls of the prison.

These are statutorily enacted directives. While the BOP can choose the *type* of prerelease custody and the *location* of that custody; the BOP cannot choose to deny these transfers, nor can the BOP decide when they are to occur.

Mr. Fortner discovered that the BOP had inaccurately calculated his ETCs earned under the First Step Act. While the BOP correctly found he had more than 365 ETCs—so it correctly reduced his sentence by one year—it *incorrectly* failed to award him all the ETCs he earned in excess of 365 days, specifically including not awarding Mr. Fortner ETCs he earned when the BOP placed him in Texas.

As a result, Mr. Fortner argued the BOP was required to transfer him to prerelease custody (to home detention or to an RRC, at its discretion) but the BOP instead told him he would be kept incarcerated in the walls of FPC Duluth.

## II.    Mr. Fortner's Habeas Petition

Mr. Fortner filed a *pro se* Habeas Petition under 28 U.S.C. § 2241 seeking relief in the District in which the BOP placed him—the District of Minnesota. He noted he had first sought an administrative remedy regarding this claim. (App. 11; R. Doc. 1 at 6).[1] He argued the BOP had miscalculated his ETCs in multiple ways,

---

[1] As reflected in Mr. Fortner's *pro se brief*, the BOP issued a denial of Mr. Fortner's request for an administrative remedy on December 2, 2024 (Pro Se Brief at 36-37).

Appellate Case: 24-3596    Page: 12    Date Filed: 05/28/2025 Entry ID: 5521069

including failing to award him credits he earned in Texas. He also brought an equal protection challenge to the way the BOP computed credits, claiming it improperly meant that inmates with longer sentences would serve proportionally more time than inmates with shorter sentences. (App. 17; R. Doc. 1 at 12 *et seq*).

Mr. Fortner argued the BOP misinterpreted the mandatory provisions of the First Step Act, causing him to wrongly be kept inside the walls of the prison— instead of being "kept" either in his own home (home confinement) or in a halfway house (a residential reentry center).

### III.    The District Court's Rulings and Mr. Fortner's Timely Appeal

The case was assigned to the Honorable John R. Tunheim, District Court Judge, and the Honorable Leo I. Brisbois, United States Magistrate Judge.

The Court construed Mr. Fortner's challenge as one to the *conditions of his confinement* rather than the *fact of his confinement* and accordingly determined the District Court had no jurisdiction to hear the claim.

This was first articulated by the Magistrate Judge in a Report and Recommendation dated July 26, 2024 (App. 39; R. Doc. 11 at 3 ("Petitioner is correct to point out that courts in other jurisdictions have granted habeas relief on behalf of prisoners seeking sooner transfer to prerelease custody… under Eighth Circuit case law, '[w]hen a prisoner is not challenging either the fact or the

6

Appellate Case: 24-3596    Page: 13    Date Filed: 05/28/2025 Entry ID: 5521069

duration of his confinement, habeas is not the proper remedy, and the court lacks jurisdiction over his claims.'").

Upon Mr. Fortner's proper objection to the Report and Recommendation, the District Court also articulated the same in an Order dated November 27, 2024 ("The dispositive question is whether Fortner may petition the Court via a writ of habeas corpus to expedite his prerelease custody…. because it sits in the Eighth Circuit and is not bound by out-of-circuit cases, the Court lacks jurisdiction to hear such claims in a habeas petition") (App. 71; R. Doc. 18 at 5).

On December 2, 2024, the District Court issued a judgment denying Mr. Fortner's motion for a writ of habeas corpus (App. 74; R. Doc. 19).

Mr. Fortner timely appealed. (App. 75; R. Doc. 20).

7

# Summary of the Argument

The District Court erred by determining the Court lacked jurisdiction to assess Mr. Fortner's claim. This error took multiple related forms.

The District Court first erred by taking the previously articulated proposition that prisoners may, through habeas review, challenge the fact of their confinement but not the conditions of their confinement, to bar Mr. Fortner's challenge. This was error because Mr. Fortner's challenge is properly construed as a challenge to the *fact* of his confinement—given the BOP *must* order Mr. Fortner released outside the walls of the yet and failed to do so.

In the alternative, even if the District Court was correct that under the letter of Eighth Circuit precedent Mr. Fortner's challenge is one to the conditions of his confinement, this Court should nevertheless authorize judicial review of BOP action. This is appropriate given the nature of the statutory scheme established in the First Step Act, which imposes non-discretionary obligations on the BOP designed to encourage participation in activities that reduce recidivism with defined statutory benefits therein. There must be meaningful judicial review to ensure the BOP is following these statutory mandates in good faith and pursuant to the law.

This brief will discuss how numerous Courts across the country have faced situations where prisoners challenge, through habeas petitions, the BOP's decision

8

Appellate Case: 24-3596    Page: 15    Date Filed: 05/28/2025 Entry ID: 5521069

to not transfer them to prerelease custody in violation of the FSA—just like Mr. Fortner has. This brief will argue habeas is the only way to viably adjudicate these claims.

If this Circuit affirms the District Court, it will establish two different sets of procedural and substantive rights. In the Eighth Circuit, a prisoner would have no right to judicial review of the BOP computation of their "prerelease" date, the date they leave the walls of the prison. In other Circuits, a prisoner would have the right to have that exact question judicially reviewed. Concerningly, the BOP alone could decide which set of rules to apply to which prisoners (by assigning them to different facilities—a decision that the BOP alone makes and that is not reviewable by the Court). Mr. Fortner explicitly asserts his right under the Fifth Amendment to the United States Constitution to not "be deprived of… liberty… without due process of law[.]" U.S. CONST. AMEND. V.

The District Court erred in finding there was no jurisdiction, and this Court should reverse and remand with an instruction that Mr. Fortner's claim is jurisdictionally proper. Then, the District Court can assess Mr. Fortner's claims—which are valid—and grant appropriate relief.

9

Appellate Case: 24-3596    Page: 16    Date Filed: 05/28/2025 Entry ID: 5521069

# Argument

## I. Standard of Review

This appeal relates to dismissal for lack of jurisdiction. This legal issue is reviewed *de novo*. *Crayton v. United States*, 27 F.4th 652, 654 (8th Cir. 2022) ("We review de novo a district court's decision dismissing a habeas petition filed under § 2241.") (*citing Jones v. Hendrix*, 8 F.4th 683, 686 (8th Cir. 2021), *petition for cert. filed*, 90 U.S.L.W. 3177 (U.S. Dec. 7, 2021) (No. 21-857)); *see also  ABF Freight Sys., Inc. v. Int'l Bhd. Of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011) ("The existence of subject-matter jurisdiction is a question of law that this court reviews de novo.").

## II. Overview of the First Step Act, and the Non-Discretionary Obligations it Placed on the Bureau of Prisons

In 2018, Congress passed the First Step Act (FSA), a bipartisan criminal reform bill. Relevant to the Court's analysis here, the FSA directed the creation of a system that "shall provide incentives and rewards for prisoners to participate in and complete evidence-based recidivism reduction programs[.]" 18 U.S.C. § 3632(d). It ultimately provided the reward of liberty through earned time credits (ETCs): "A prisoner, […] who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows […] 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities[…and,

10

if they meet certain conditions] shall earn an additional 5 days of time credits for every 30 days of successful participation[.]" 18 U.S.C. § 3632(d)(4).

The first 365 days of Earned Time Credits (ETCs) are applied towards a reduction in the prisoner's sentence. 18 U.S.C. § 3624(g)(3). Any credits beyond those 365 days are applied to expedited "prerelease custody" eligibility. 18 U.S.C. § 3632(d)(4)(C). Under the FSA, the BOP must transfer eligible prisoners who have earned enough time to prerelease custody, which has two candidate methods the BOP may choose between—RRC and home confinement. *See Jones v. Engleman*, No. 22-cv-05292-MCS-GJS, 2022 U.S. Dist. LEXIS 185029, at *2 (C.D. Cal. Oct. 7, 2022).

Through the First Step Act Congress was not *encouraging* the BOP to take these steps, Congress was *directing* it to do so, in this manner. Accordingly, the BOP does not have the discretion to either (1) withhold ETCs that were properly earned, or (2) decline to release an eligible prisoner who has accrued ETCs to *either* home detention or an RRC *See, e.g. Woodley v. Warden*, 24-cv-3053-JWL, 2024 U.S. Dist. LEXIS 87521 (D. Kan. May 15, 2024):

> Section 3632(d) provides that prisoners shall earn ETCs based on participation … Under a plain reading of [Sec. 3632(d)(4)(C)], which includes the word 'shall', the BOP is *required* to transfer a prisoner to prerelease custody or supervised release if the prisoner is 'eligible' as determined under Subsection 3624(g). Under Section 3624(g), a prisoner is 'eligible' if the prisoner has earned ETCs in an amount equal to the remainder of the prisoner's term of imprisonment, which remainder amount has been computed, and the prisoner has met certain

11

benchmarks for the assessed risk[…] Accordingly, the FSA requires the BOP to place petitioner in prerelease custody.

*Id*. at *6-*7.

Thus, at least three key items are not up to the BOP but are instead codified in the act: (1) whether a prisoner earns ETCs or not, (2) that the BOP must apply the first 365 ETCs to early release, and (3) that the BOP has two options for how to apply ETCs beyond the first 365—either home detention or release to an RRC.

Here, the first 365 days Mr. Fortner earned are not contentious. Mr. Fortner claims the BOP failed to grant him the benefit of ETCs earned *beyond* the first 365 days. If correct, he would be entitled to be released from imprisonment to home confinement or an RRC, where he would serve the remainder of his sentence.

Mr. Fortner, through a petition for habeas corpus relief, made this claim as explained above. The Circuit has not explicitly ruled upon whether habeas is the appropriate vehicle to seek relief.

## III.   The Pre-First Step Act Law Regarding Habeas Petitions

An overview of pre-FSA law regarding when habeas corpus petitions are appropriately filed will assist this Court in evaluating Mr. Fortner's claim.

In the 1973 Supreme Court case *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Court faced a claim from state prisoners that they were unconstitutionally deprived of good-time credits and, had those credits been properly applied, they would have been immediately released from prison. *Id*. at 476. That is the relief

they sought. *Id*. But they sought that relief under the Civil Rights Act, 42 U.S.C. §

1983, rather than the federal habeas corpus statute (there, 28 U.S.C. § 2254, as the

prisoners were in State custody). *Id*.

The Court ultimately concluded that a 1983 action was not proper—the *only*

remedy available to a state prisoner seeking a speedier release from imprisonment

is a federal habeas action:

> we hold today that when a state prisoner is challenging the very fact or
> duration of his physical imprisonment, and the relief he seeks is a
> determination that he is entitled to immediate release or a speedier
> release from that imprisonment, his sole federal remedy is a writ of
> habeas corpus

*Id*. *at 500.* This holding was based on the common-law history of habeas corpus:

> It is clear, not only from the language of §§ 2241 (c) (3) and 2254 (a),
> but also from the common-law history of the writ, that the essence of
> habeas corpus is an attack by a person in custody upon the legality of
> that custody, and that the traditional function of the writ is to secure
> release from illegal custody. […]
>
> By the time the American Colonies achieved independence, the use of
> habeas corpus to secure release from unlawful physical confinement,
> whether judicially imposed or not, was thus an integral part of our
> common-law heritage.
>
> […O]ver the years, the writ of habeas corpus evolved as a remedy
> available to effect discharge from any confinement contrary to the
> Constitution or fundamental law, even though imposed pursuant to
> conviction by a court of competent jurisdiction.
>
> […The writ is proper upon a claim of ] being unlawfully subjected to
> physical restraint[.]

Appellate Case: 24-3596     Page: 20     Date Filed: 05/28/2025 Entry ID: 5521069

*Id*. at 484-86. Then, it applied that to the case before it—the unlawful deprivation

of good time:

> In the case before us, the respondents' suits in the District Court fell squarely within this traditional scope of habeas corpus. They alleged that the deprivation of their good-conduct-time credits was causing or would cause them to be in illegal physical confinement, i.e., that once their conditional-release date had passed, any further detention of them in prison was unlawful[…]
>
> Even if the restoration of the respondents' credits would not have resulted in their immediate release, but only in shortening the length of their actual confinement in prison, habeas corpus would have been their appropriate remedy. […] their suits would still have been within the core of habeas corpus in attacking the very duration of their physical confinement itself.

*Id*. at 487-88. The Court also drew a distinction—one that has persevered—

between a prisoner challenging the fact of their confinement versus conditions of

their confinement—and that § 1983 actions had been deemed appropriate in prior

cases "related solely to the States' alleged unconstitutional treatment of them while

in confinement" or "the conditions of his prison life[.]" Habeas was proper when

the claim was, like here, made "to challenge the very fact or duration of the

confinement itself." *Id*. at 498-99 (internal citations omitted).

The landmark opinion in *Preiser* coincided with the Court's ruling ten years

prior in *Jones v. Cunningham*, 371 U.S. 236 (1963). There, the Court affirmed that,

while the habeas corpus statute was limited to those "in custody" that term was to

14

be read broadly. *Id*. at 238. That was based on the history of the writ in England and the United States, *id*. at 239. The writ was *not* only available to those who were imprisoned and sought to not-be-imprisoned. *Id*.

In extending the writ to a parolee, the *Jones* Court noted the restrictions being on parole placed on the petitioner's life, and held:

> Such restraints are enough to invoke the help of the Great Writ. Of course, that writ always could and still can reach behind prison walls and iron bars. But it can do more. It is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose -- the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty. While petitioner's parole releases him from immediate physical imprisonment, it imposes conditions which significantly confine and restrain his freedom; this is enough to keep him in the "custody" of the members of the Virginia Parole Board within the meaning of the habeas corpus statute[.]

*Id*. at 243. The Supreme Court would later affirm "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release[.]" *Heck v. Humphrey*, 512 U.S. 477, 481 (1994). A claim seeking money damages from an attack on something other than the fact or length of confinement, on the other hand, must be brought under § 1983. *Id*.

The Eighth Circuit followed this basic delineation. In *Kruger v. Erickson*, 77 F.3d 1071 (8th Cir. 1996)(per curiam), the circuit confirmed "In *Preiser*[…] the Supreme Court delineated what constitutes a habeas action as opposed to a 42

15

U.S.C. § 1983 claim. […] The essence of habeas corpus is an attack by a person in custody upon the legality of that custody.[] If the prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy." *Id*. at 1073.

In *Spencer v. Haynes*, 774 F.3d 467 (8th Cir. 2014)—a seminal case—the petitioner, Mr. Spencer, was placed in four-point restraints after biting a prison staff member. He brought a petition for habeas corpus alleging a Due Process violation for being put in four-point restraints without a hearing. *Id*. at 469. The Circuit cited the same language as in *Kruger*, above in ultimately finding habeas was *not* the proper method to resolve Mr. Spencer's complaints. As the Circuit explained:

> Spencer does not challenge his conviction, nor does he seek a remedy that would result in an earlier release from prison. Rather, Spencer argues on appeal that being put in four-point restraints for such an extended period of time violated his Eighth Amendment right against cruel and unusual punishment. As such, Spencer's constitutional claim relates to the conditions of his confinement.[…] a habeas petition is not the proper claim.

*Id*. at 469-70.  The *Spencer* Court cited approvingly a Fifth Circuit case, *Cook v. Hanberry*, 592 F.2d 248, 248 (5th Cir. 1979) for the proposition that a prisoner could not request transfer to a different facility under habeas because "habeas corpus is not available to prisoners complaining only of mistreatment" and "the relief… is in the form of equitably-imposed restraint, not freedom from otherwise lawful incarceration." *Id*. at 471.

16

Other examples of challenges to conditions of confinement—thus claims not viable under habeas—abound. *See e.g., Pollock v. Marske*, 2022 U.S. App. LEXIS 11190 (8th Cir. Apr. 26, 2022) (unpublished per curiam) (cannot challenge custody classification via habeas); *Pettersen v. Clarke*, 1996 U.S. App. LEXIS 8273 (8th Cir. Apr. 18, 1996) (unpublished per curiam) (cannot challenge placement in segregation via habeas)

In *Miller v. Whitehead*, 527 F.3d 752 (8th Cir. 2007) the Circuit resolved the claims of prisoners who claimed they should have been placed in RRCs yet were kept in prison instead. Those claims were brought under habeas petitions, and the Circuit reached the merit of these petitioners' claims—while they were of course under a different statutory scheme than the yet-to-be-passed First Step Act, they found no jurisdictional bar in assessing a prisoner's habeas claims that they should be in RRCs, not prison walls.

Likewise, in *Benke v. Norris*, No. 99-4179, 2000 U.S. App. LEXIS 22989 (8th Cir. Sep. 13, 2000) (unpublished per curiam), the Circuit held a person who challenged "the requirement that he complete the Therapeutic Community Program as a condition for parole, is in fact seeking release or a shortening of the duration of his confinement, and thus must pursue the matter by filing a petition for habeas corpus relief," *id*., and, in *Wilson v. Lockhart*, 949 F.2d 1051, 1051 (8th Cir. 1991), this Court held a person who was challenging his parole eligibility date was, in

17

fact, challenging his *length of confinement* not his conditions of confinement—and so, even though "the result of a decision in his favor would not necessarily be an earlier release from confinement"—habeas was the proper vehicle for his claim. These parallels are strong.

## IV. Various Courts' assessments of whether BOP refusals to transfer to prerelease custody are cognizable under Habeas

Combining these two areas of the law brings the natural question this Court is now faced with. If a petitioner wants to bring a claim that the BOP has misapplied the mandates of the First Step Act to them, and so the prisoner *should* be in BOP prerelease custody (at an RRC or at home) but is *instead* in the walls of the prison, what sort of challenge do they make?

Is this violation (like the loss of good time) one that amounts to challenging the fact or legality of their confinement—and thus must they make a habeas challenge? Or is this a violation (like being in four-point restraints) one that amounts to challenging the conditions of their confinement—and thus must they make a Section 1983 claim?

Courts that have assessed this question thus far have been inconsistent. While many have ruled habeas is the appropriate vehicle to adjudicate these claims, courts have been inconsistent both from circuit to circuit and within the same circuit. This will be explained below:

Appellate Case: 24-3596    Page: 25    Date Filed: 05/28/2025 Entry ID: 5521069

a. The District Court's holding Mr. Fortner cannot proceed by habeas

As Mr. Fortner is incarcerated in Minnesota and brought his habeas petition in the District of Minnesota, his claim that the BOP wrongly failed to transfer him to "prerelease custody" was assessed by a Minnesota Court.

There, the Magistrate Judge, the Honorable Leo I. Brisbois, first recommended the District Court dismiss for lack of jurisdiction:

> Petitioner is correct to point out that courts in other jurisdictions have granted habeas relief on behalf of prisoners seeking sooner transfer to prerelease custody. See, e.g., Woodley v. Warden, USP Leavenworth, No. 24-cv-2053 (JWL), 2024 WL 2260904, at *2–4 (D. Kan. May 15, 2024). That those decisions are from other jurisdictions is telling. This Court is obligated to follow the decisions of the United States Court of Appeals for the Eighth Circuit, and under Eighth Circuit case law, "[w]hen a prisoner is not challenging either the fact or the duration of his confinement, habeas is not the proper remedy, and the court lacks jurisdiction over his claims." Johnson, 2022 WL 3135304, at *1 (collecting cases).

> Even if the present habeas Petition were to be granted in full, Petitioner would not spend even a minute less in the custody of the BOP than he is currently scheduled to spend—he would only spend more of that period of BOP detention in prerelease custody. In other words, the claim amounts merely to a challenge to the conditions of Petitioner's confinement, not a challenge to the length of the confinement itself. Whatever the merits of the claim that the BOP has unlawfully failed to award time credits, it is not a habeas claim[.]

(App. 39; R. Doc. 11 at 3). Mr. Fortner objected, but the District Court agreed with the R&R:

> The dispositive question is whether Fortner may petition the Court via a writ of habeas corpus to expedite his prerelease custody. […]

> Federal courts have jurisdiction to hear habeas petitions concerning the "fact or length of the confinement" but, at least in the Eighth Circuit,

19

lack jurisdiction to hear "conditions-of-confinement" claims via habeas. *Spencer v. Haynes*, 774 F.3d 467, 470 (8th Cir. 2014). Here, Fortner does not contend he is eligible for early release from BOP custody. He argues only that the characterization of that custody—from a prison setting to prerelease custody—should be changed earlier because of his accrual of FTCs. But because it sits in the Eighth Circuit and is not bound by out-of-circuit cases, the Court lacks jurisdiction to hear such claims in a habeas petition. *See Johnson v. Birkholz*, No. 21-2017, 2022 WL 3135304, at *2 (D. Minn. Aug. 5, 2022) (collecting cases).

(App. 71; R. Doc. 18 at 5).

*Johnson v. Birkholz*—as cited by the Courts above—is a District of Minnesota case that indeed held that prisoners could not claim under habeas that "they are immediately eligible for and entitled to home confinement under 18 U.S.C. § 3624(c)(2)." *Id*. at *1. In reaching that analysis, the *Johnson* District Court cited the Eighth Circuit cases summarized above (*Preiser*, *Spencer*, and *Kruger*). It went on to reason that "[h]ome confinement … is simply one of several forms of BOP custody[,]" *id*. at *2, and habeas is not appropriate to seek "transfer from one form of BOP custody to another (like a legal action seeking transfer from one BOP facility to another)." *Id*. at *3.

The District Court thus interpreted that Mr. Fortner may *not* claim, through habeas, that he should be released outside the walls of the prison on prerelease custody rather than imprisoned.

20

b. Implicitly conflicting rulings otherwise reached in the District of Minnesota

Notably, at least one Minnesota Court had previously indicated it would not follow this interpretation—in *Silva v. Paul*, No. 18-cv-2177-ECT, 2019 U.S. Dist. LEXIS 21699 (D. Minn. Jan. 7, 2019), a prisoner challenged, through habeas, complaints regarding vocational programs and transfers between different detention facilities (i.e., prisons). *Id.* at \*13-14. The District Court held that habeas was not the proper remedy for *those* claims. *But*, the *Silva* Court indicated—by contrast—that, *had* the petitioner been seeking release to a RRC or home confinement—*that* claim would likely be cognizable under habeas review.

The *Silva* Court explained the relief the petitioner before it sought from the Court was "in the form of equitably-imposed restraint, not freedom from otherwise lawful incarceration" and the petitioner was, in essence, complaining of mistreatment—not seeking relief by release. *Id.* at \*14. It went on to *contrast* cases where habeas petitions were brought that "dealt with determining whether the BOP criteria for placement of an inmate into a halfway house (otherwise referred to as a Residential Re-Entry Center ('RRC') or a community corrections center ('CCC'))"—*Id.* at \*15. In cases where a prisoner said they should be transferred not to another prison but outside the walls of the prison, "[o]ther courts, including courts within this District, have concluded that questions of RRC placement pertaining to § 3621(b) implicate the fact or duration of confinement because the

21

difference between a prison and a halfway house represents 'a quantum change in the level of custody.'" *Id*. at *16.

The *Silva* court concluded: "Clearly, the difference between a prison and a halfway house represents a 'quantum change in the level of custody' under *Graham* because the two forms of custody are qualitatively different." *Id*. at *17. The *Silva* Court would have placed Mr. Fortner's claim, then, as one that would be properly assessed via habeas, not § 1983. This logic will be discussed in subsequent sections. Mr. Fortner contends it is valid and persuasive.

    c.  Conflicting Interpretation elsewhere in the Eighth Circuit
Looking elsewhere in the Circuit does not provide a clear answer.

For example, the Honorable Lawrence L. Piersol in the District of South Dakota, in *O'Bryan v. Cox*, 21-cv-4052, U.S. Dist. LEXIS 167316 (D.S.D. Sep. 1, 2021) faced a habeas corpus petition under 28 U.S.C. § 2241 where the prisoner claimed he was entitled to 43.75 days of good time credit. The Court noted the "mandatory words such as 'shall'" in the FSA, *id.* at *8, reached the merits of the petition, and ultimately held "Petitioner is entitled to receive all of his 43.75 days of credit to move back his current[] release date. Whether those time credits are applied for pre-release custody or transfer to supervised release is by statute within the discretion of the Bureau of Prisons. […] The petition pursuant to 28 U.S.C. § 2241, Doc. 1, is granted to the extent set forth above." *Id*. at *11.

Appellate Case: 24-3596   Page: 29   Date Filed: 05/28/2025 Entry ID: 5521069

On the other hand, the Honorable Magistrate Judge Patricia S. Harris, opined, in *Mannino v. Garrett*, No. 25-cv-00010-JM-PSH, 2025 U.S. Dist. LEXIS 83200, at *3 (E.D. Ark. Apr. 9, 2025), that a parallel claim was "[i]n essence, []therefore a request for 'sooner placement in prerelease custody-that is, a change in his conditions of confinement, not a change in the fact or duration of confinement,' and a habeas corpus petition 'cannot be used to pursue such a claim.'"). There does not appear to be a uniform rule here.

d. Conflicting Interpretations in the other Circuits

Likewise—although it appears to the undersigned that most Courts having addressed the issue agreed with the habeas approach—courts outside the Eighth Circuit also fall on both sides of the question.

The view that claims like Mr. Fortner's are properly brought by habeas petitions was clearly articulated by the Honorable John W. Lungstrum in the District of Kansas. *Woodley v. Warden*, 24-cv-3053-JWL, 2024 U.S. Dist. LEXIS 87521 (D. Kan. May 15, 2024). There, the prisoner made a claim (under habeas) that he was immediately entitled to transfer from prison to either RRC or a halfway house under the first step act. *Id*. at *3-4. The responding Assistant United States Attorney disagreed, arguing the Court had no authority to interfere with "the place of petitioner's confinement [which] falls within the BOP's discretion." *Id*. at *4.

23

The *Woodley* Court went on to discuss the FSA's statutory scheme, noting the repeated use of "shall." *Id*. at *6. It found that, after a prisoner earns time credits for participation in qualifying activities:

> Under a plain reading of this provision of the FSA, which includes the word "shall", the BOP is *required* to transfer a prisoner to prerelease custody or supervised release if the prisoner is "eligible" as determined under Subsection 3624(g). Under Section 3624(g), a prisoner is "eligible" if the prisoner has earned ETCs in an amount equal to the remainder of the prisoner's term of imprisonment […] Accordingly, the FSA requires the BOP to place petitioner in prerelease custody.

*Id*. at *7. The Court rejected the BOP's claim that doing so was not feasible— holding the BOP may choose what type of prerelease custody to release the qualifying prisoner to, but may *not* choose not to release the prisoner to any:

> [T]he BOP retains the discretion to decide whether to transfer petitioner to an RRC or to home confinement, or even whether to transfer petitioner to early supervised release.[] Nor does the Court require that petitioner be placed in any particular RRC; thus, the BOP retains the discretion to choose the particular prerelease facility. […]
>
> Accordingly, because the BOP's failure to transfer petitioner to prerelease custody violates federal law, the Court grants the petition for relief. Respondent and the BOP are ordered to effect such a transfer.

*Id*. at *9 (citations omitted).

The Woodley Court thus reached the merits of the habeas petition and granted it.

Courts in the Ninth Circuit have, like the *Woodley* Court, largely reached the merits of the wrongful-prerelease-denial habeas claims presented to them. In *Jones*

24

*v. Engleman*, 22-cv-5292-MCS-GJS, U.S. Dist. LEXIS 185635 (C.D. Cal. Sep. 7, 2022) (Magistrate Judge Report and Recommendation) the Court again discussed the First Step Act Earned Time Credit scheme, *id*. at *2-5, again faced a habeas claim where a prisoner alleges that they were wrongly being held in the prison and should be released to supervised release or prerelease custody, *id*. at *8, considered administrative exhaustion and found it not a bar to the claim, *id*. at *14-22, "proceed[ed] to the merits" of the claim, *id*. at *22, emphasized the mandatory nature of the FSA and the representations the BOP itself had made regarding application of the FSA, *id*. at *25-35, and, after a further discussion of the merits, "conclude[d] that the Petition should be granted". *Id*.

In *Tong v. Derr*, 22-cv-543-JAO-WRP, 2023 U.S.Dist. LEXIS 103183 (D. Haw. June 14, 2024), the District Court likewise faced a habeas petition where the prisoner asked for the "specific relief[] to be released to RRC/HC immediately" based on the First Step Act, *id*. at *10. The Court reached the merits of the petition, *id*. at *15, and found the BOP had computed the petitioner's days correctly—so it denied relief. *See also Jobin v. Warden, FCI-Mendota*, 23-cv-01700-WBS-SKO, 2024 U.S. Dist. LEXIS 60046 at *12 (E.D. Cal. Apr. 1, 2024) (Report and Recommendation) (reaching merits of habeas claim and directing BOP to "recalculate Petitioner's sentence utilizing September 14, 2020, as the correct start date on which Petitioner became eligible to earn FSA credits");

25

Likewise, in District Courts within the Second Circuit, challenges like these have been held permissible. *See, e.g.*, *Mohammed v. Stover*, 23-CV-757 (SVN), 2024 U.S. Dist. LEXIS 73508, at *4 (D. Conn. Apr. 23, 2024):

> A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of [her] sentence, but challenges instead its execution subsequent to [her] conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). Thus, § 2241 petitions are appropriately used to challenge FSA time credit calculations. *See Dailey v. Pullen*, No. 3:22-cv-1121 (SRU), 2023 U.S. Dist. LEXIS 84392, 2023 WL 3456696, at *2 (D. Conn. May 15, 2023) (considering a challenge to First Step Act time credit calculation on a § 2241 petition).

*Id*. Indeed—when a District of Connecticut Court faced a Section 1983 claim under these facts, it rejected that claim and said habeas was the *sole* method under which this may be challenged. *Cicchiiello v. Warden Danbury FCI*, No. 24-cv-1240-VAB, 2025 U.S. Dist. LEXIS 22322, at *11 (D. Conn. Feb. 7, 2025) (facing a set of § 1983 claims, including one relating to FSA time credits and a delay of prerelease custody, and holding):

> Ms. Cicchiello's [Section 1983] due process claims concerning FSA time credit deprivations or delay to her release to a Residential Reentry Center or home confinement implicate a new *Bivens* context. The Court cannot conclude that the *Bivens* remedy should be extended to Plaintiff's due process claims concerning any deprivation of her FSA earned time credits or her release to a Residential Reentry Center or home confinement because Congress has clearly established available remedy for such deprivations through a habeas action under 28 U.S.C. § 2241 for such claimed deprivations.

*Id*.

Appellate Case: 24-3596    Page: 33    Date Filed: 05/28/2025 Entry ID: 5521069

Confusingly, a Western District of Texas Court and an Eastern District of Texas Court faced this question about two months apart. In *Brenneman v. Salmonson*, 22-cv-7-RWS-JBB, 2025 U.S. Dist. LEXIS 56851 (E.D. Tex. Feb. 25, 2025) (Report and Recommendation (adopted by District Court in Mar. 26, 2025 order, 2025 U.S. Dist. LEXIS 55812), the Court faced a familiar claim:

> Petitioner contends the BOP failed to submit him for placement in a Residential Reentry Center ("RRC") and that he should have been placed in RRC as of March 28, 2023. Because Petitioner was awarded the full 365 days of SCA credits towards pre-release custody, the BOP submitted an RRC placement recommendation to the Residential Reentry Manager for November 22, 2024[…]

*Id*. at *19. It ruled in accord with Mr. Fortner's District Court:

> The core issue in determining whether a prisoner must pursue habeas corpus relief rather than a civil rights action is to determine whether the prisoner challenges the "fact or duration" of his confinement or merely the rules, customs, and procedures affecting "conditions" of confinement. *Spina v. Aaron*, 821 F.2d 1126, 1128 (5th Cir. 1987). As a result, Petitioner's claims for release to an RRC or home confinement do not contest the fact or duration of his confinement, and he is not entitled to federal habeas relief. The dismissal of this petition should be without prejudice to Petitioner's ability to assert his claim as a civil rights action.

*Id*. at *22-23. But—in *Sims v. Rosalez*, 24-cv-1222-RP, 2025 U.S. Dist. LEXIS 87924 (W.D. Tex. May 8, 2025), the District Court faced the same sort of claim—petitioner challenged BOP determination that he earned "55 time credits towards placement in a residential re-entry center or home confinement, and 365 time credits towards his release." *Id*. at *2. The Court granted his petition requesting a

27

Appellate Case: 24-3596     Page: 34     Date Filed: 05/28/2025 Entry ID: 5521069

recalculation of time credits, *id*. at \*13. It had previously noted the petitioner "already reached the maximum number of credits toward his release (365 days) under this provision.[] As such, his remaining credits can be applied to transfer to a residential re-entry center or home confinement[.]" *Id*. at \*4, n.1.

Other courts have rejected habeas petitions on similar logic as the District Court did here. *See, e.g.*, *Simpson v. Bayliss*, No. 5:24-CV-154, 2024 U.S. Dist. LEXIS 189100, at \*4, \*12 (N.D.W. Va. Oct. 17, 2024) (Where a petitioner requested "this Court to order the BOP to 'apply all currently earned FTC['…] which would thereby allow him to be released to prerelease custody" the Court "found that determinations of whether to release a prisoner to an RRC or home confinement are not reviewable"); *Rodriquez v. Warden of LSCI-Allenwood*, 24-cv-920, 2024 U.S. Dist. LEXIS 140499, at \*5-6 (M.D. Pa. Aug. 7, 2024) ("Rodriquez's challenge to his eligibility for pre-release custody is not cognizable in a § 2241 petition because it does not challenge the fact or duration of his imprisonment, which is the 'essence of habeas corpus'"). There is not uniformity.

### e. A clear set of laws is required

Guidance is needed for the Courts to have a clear understanding of the law and their role in assessing these questions. And guidance is needed for prisoners so they may have the merits of their claims decided by the Courts.

When petitioners have sought judicial review:

28

Some prisoners have brought Section 2241 habeas petitions and the Courts have reached the merits—granting or denying relief. *See, e.g.*, *Woodley*, supra at 11.

Other prisoners have brought Section 2241 habeas petitions and been told these claims can only be litigated as a civil action. *See, e.g.*, *Brenneman*, supra at 26.

Other prisoners have brought Section 1983 claims and been told these claims can only be litigated through habeas relief. *See, e.g.*, *Cicchiiello,* supra at 26.

Prisoners *do* have the right to be released and are entitled to have this right meaningfully reviewed by the Courts. *Marbury v. Madison*, 5 U.S. 137, 153 (1803) ("It is a settled and invariable principle, that every right, when withheld, must have a remedy, and every injury its proper redress."). This Court should clarify that the proper method for resolving claims like Mr. Fortner's is via habeas—and, in so doing, it should reverse the District Court.

## V. The Court should find Mr. Fortner's habeas petition jurisdictionally appropriate

a. The text of Supreme Court precedent and the History of habeas mandate Mr. Fortner proceeding via habeas

The plain language of the Supreme Court's landmark decision in *Preiser* supports Mr. Fortner's position that his claim properly invokes the courts' habeas

29

corpus jurisdiction. The *Preiser* Court explicitly clarified the dividing line between habeas corpus petitions and civil rights actions under 42 U.S.C. § 1983:

> [W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus[.]

*Id*. at 500.

This passage identifies two critical elements that define the scope of habeas relief: (1) the challenge must relate directly to the prisoner's confinement itself—its "fact or duration," and (2) the remedy sought must be release from confinement or its shortening. "Conditions of confinement" cases not properly brought under habeas uniformly do not meet at least one of these elements. But Mr. Fortner's claim meets both.

He contests the Bureau of Prisons' refusal to properly apply Earned Time Credits (ETCs), credits explicitly authorized by Congress under the First Step Act, which would require his transfer out of prison walls to prerelease custody. His requested remedy—a court order mandating the BOP's compliance—would precisely effectuate "immediate release or a speedier release" from imprisonment within the prison walls, into a different and less restrictive form of custody mandated by statute.

Mr. Fortner's claim aligns squarely within this established doctrinal framework. At its core, his challenge addresses precisely the fact and legality of his

30

continued confinement behind prison walls. His argument is not an attack on conditions within the prison walls; rather, his argument is that it is unlawful for him to be confined behind those walls due to a Congressional statute. Such a claim implicates precisely the kind of scenario described in *Preiser*—it directly challenges "the very fact" and legitimacy of his continued imprisonment.

Under the First Step Act, Congress explicitly established a statutory scheme through which prisoners could earn tangible rights that directly impact their liberty. ETCs do not relate to the internal management of prison life but operate explicitly to shorten the length of confinement and alter the fact of incarceration itself. This is true for not only the first 365 days of ETCs but also any further ETCs that move prisoners out of prison walls and into prerelease custody. Thus, when the BOP improperly refuses to recognize earned ETCs, it imposes upon Mr. Fortner an illegitimate and unlawful restraint—exactly the type of scenario historically cognizable by habeas corpus.

The historical function of habeas corpus has always been to provide relief from unlawful restraint on liberty, particularly from incarceration or similar substantial restrictions. The Supreme Court expressly recognized and embraced this historical role in *Preiser*, explaining:

> By the time the American Colonies achieved independence, the use of habeas corpus to secure release from unlawful physical confinement, whether judicially imposed or not, was thus an integral part of our common-law heritage. […] [O]ver the years, the writ of habeas corpus

31

Appellate Case: 24-3596     Page: 38     Date Filed: 05/28/2025 Entry ID: 5521069

evolved as a remedy available to effect discharge from any confinement contrary to the Constitution or fundamental law.

*Preiser*, 411 U.S. at 485.

This historical tradition explicitly rejects any overly narrow or formalistic interpretation of habeas corpus. Instead, habeas corpus historically served a broad and critically important purpose: ensuring that prisoners have a swift, effective remedy whenever their confinement was not uncomfortable or unfair, but fundamentally illegitimate or illegal. The Supreme Court emphasized in *Jones v. Cunningham*, 371 U.S. 236 (1963), that the writ of habeas corpus historically "could and still can reach behind prison walls and iron bars," but crucially also emphasized its broad application:

> It is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty.

371 U.S. at 243.

The historical flexibility of habeas corpus supports applying the writ here even though Mr. Fortner remains under a form of BOP custody (prerelease custody). As the Supreme Court held in *Jones*, habeas corpus has historically applied whenever a significant wrongful restraint on liberty occurred, regardless of technical distinctions (here, formal custody classification). The writ historically

Appellate Case: 24-3596     Page: 39     Date Filed: 05/28/2025 Entry ID: 5521069

addressed unlawful restraint on freedom broadly and practically, not formalistically.

The Supreme Court's unequivocal statements in *Preiser*, the precedent explaining *Preiser*, and historical common-law tradition underlying habeas corpus, all show the same plain conclusion. Mr. Fortner's claim may, and must, proceed via habeas corpus. This plain interpretation can end the Court's inquiry.

b. The Earned Time Credits (ETCs) at Issue Are Directly Analogous to "Good-Time" Credits, Which Are Exclusively Reviewable Under Habeas Corpus

But, of course, if the Circuit needs look further it can look to a *remarkably* strong parallel—good time credits—which precedent unequivocally has held must be raised only via habeas corpus. *Preiser*, 411 U.S. at 487-488.

Good time credits are credits awarded to prisoners for good behavior or rehabilitative activities that directly shorten their term of incarceration. ETCs are the same type of credit and have the same type of function. Indeed, ETCs function identically to good time credits in every legally significant aspect—so the Court should classify challenges regarding ETCs in the same way. They too should be processed exclusively through habeas petitions rather than civil remedies.

Again, *Preiser* and other cases explicitly held that good-time credit disputes are only cognizable under habeas corpus. The prisoners in *Preiser* challenged the deprivation of good-time credits, arguing that their physical incarceration had been improperly lengthened due to the improper denial of those credits. The Supreme

33

Court firmly concluded that habeas corpus is the exclusive remedy in such cases. *Preiser*, 411 U.S. at 487-488. This remains true.

The First Step Act provides Earned Time Credits (ETCs) explicitly to incentivize prisoner participation in rehabilitative and productive activities. ETCs, like good-time credits, use mandatory language indicating that prisoners "shall earn" credits upon fulfilling certain statutory criteria. Specifically, 18 U.S.C. § 3632(d)(4) provides unequivocally that prisoners participating successfully in approved activities "shall earn time credits." ETCs beyond the first 365 days must be applied to moving the prisoner from incarceration within prison walls into "prerelease custody"—release outside the prison walls in a markedly less restrictive form of custody.

Some Courts have attempted to distinguish ETCs from traditional good-time credits on grounds that ETCs do not result in immediate release from BOP jurisdiction entirely but rather transfer the prisoner into prerelease custody while still *technically* under BOP supervision. Under this proposed distinction, the Government might argue that traditional good-time credits directly terminate prison jurisdiction entirely, whereas ETCs purportedly merely change the conditions under which BOP retains custody.

Doing so would be attempting to create a meaningful distinction when none exists. The Supreme Court and relevant circuit courts, including the Eighth Circuit,

34

have consistently emphasized that habeas corpus focuses fundamentally on the fact and nature of physical incarceration itself—not on the precise administrative details of who technically holds custody over the prisoner. What matters legally is whether the prisoner remains physically confined or not. *See, e.g., Jones v. Cunningham*, 371 U.S. 236, 243 (1963) (noting the proper application of habeas did not depend upon whether the parole board had physical custody of the liberty-impaired-petitioner). It recognized habeas as appropriate even in cases involving parole or supervised release conditions. *Id*. Such conditions obviously continue state jurisdiction or custody in some form. The key issue for habeas is whether there is an illegal restraint on physical liberty—not whether custody technically remains under a particular agency or government body.

Applying this principle, the purported distinction between good-time credits and ETCs vanishes. In both scenarios, the prisoner's fundamental claim is that their physical confinement within prison walls has been wrongfully prolonged due to improper credit calculations. Both create legally enforceable rights for prisoners not to remain physically incarcerated in prison longer than the statute allows. Just as challenges to good-time credits must proceed exclusively through habeas corpus, so too must Mr. Fortner's challenge to ETC calculations proceed via habeas corpus.

35

c. The "Quantum Change" Argument Persuasively Supports Habeas Jurisdiction Over Mr. Fortner's Claim

Another persuasive rationale supporting habeas jurisdiction for Mr. Fortner's claim emerges clearly from the reasoning articulated in not only *Silva v. Paul*, No. 18-cv-2177-ECT, 2019 U.S. Dist. LEXIS 21699 (D. Minn. Jan. 7, 2019), but districts and circuits around the country. These cases recognize that habeas corpus is the proper remedy whenever a prisoner's claim seeks what courts have termed a "quantum change" in custody. While the name is inexact, the logic is strong: a "quantum change" in custody occurs when the prisoner's claim seeks not merely improved conditions within prison walls, but instead the legally mandated transition from incarceration behind prison walls to significantly less restrictive custodial conditions outside prison. These are appropriately distinguished from claims seeking relief involving internal prison management decisions—such as the conditions of their incarceration or mere transfers between prison facilities—. As the *Silva* Court persuasively explained:

> [O]ther courts, including courts within this District, have concluded that questions of RRC placement… implicate the fact or duration of confinement because the difference between a prison and a halfway house represents a "quantum change in the level of custody."

*Silva*, 2019 U.S. Dist. LEXIS 21699, at *16. It succinctly concluded, "Clearly, the difference between a prison and a halfway house represents a

36

'quantum change in the level of custody' … because the two forms of custody are qualitatively different." *Id*. at *17.

The logic underlying the "quantum change" language is the reality that not all custodial arrangements are legally equivalent—and prisoners have a right, through habeas, to challenge the character and nature of their custody itself. Placement into prerelease custody, whether at an RRC or in home confinement, dramatically alters the prisoner's liberty interests compared to incarceration within prison walls. In prerelease custody, prisoners reside in a non-prison environment, maintain regular contact with family, secure employment, participate in community life, and generally live under far fewer restrictions compared to prison confinement. Even though some administrative oversight by the Bureau of Prisons remains (as a person does when on parole or supervised release), the substantive liberty interests are qualitatively transformed.

The very statutory design of the First Step Act also speaks to this concept. Congress created Earned Time Credits with the purpose of transitioning prisoners out of prison confinement into prerelease custody *precisely because* these two types of BOP custody are so markedly different. Congress did not merely adjust prison conditions or give extra commissary money through ETCs; it required the BOP move prisoners physically outside prison walls into a different custodial

37

status. To treat this change as merely a condition-of-confinement matter, as the District Court erroneously did below, disregards the reality of the situation.

The reasoning articulated in *Silva* finds significant support around the country. *See, e.g., Bania v. Roal*, No. 11-cv-925 (SRN/TNL), 2011 U.S. Dist. LEXIS 155178 (D. Minn. Oct. 24, 2011) (Report and Recommendation) ("RRC placement decisions implicate the fact or duration of confinement."); *Dale v. Ziegler,* No. 10-cv-87, 2011 U.S. Dist. LEXIS 37603 (N.D. W. V. Jan. 18, 2011) ("The question is whether the prisoner is seeking a 'quantum change in the level of custody' which must be addressed by habeas corpus, or 'a different program or location or environment,' which raises a civil rights claim."); *Williams v. United States Dist. Court for the Dist. of Newark*, No. 11-884 (WJM), 2011 U.S. Dist. LEXIS 116913, at *16 (D.N.J. Oct. 7, 2011) ("In addition, where a prisoner seeks a 'quantum change' in the level of custody, for example, where a prisoner claims to be entitled to probation or bond or parole, habeas is the appropriate form of action."); *Davis v. Emmerich*, No. 24-cv-441-JDP, 2024 U.S. Dist. LEXIS 208253, at *2-3 (W.D. Wis. Nov. 15, 2024) ("A petition for a writ of habeas corpus is the proper vehicle '[i]f the prisoner is seeking what can fairly be described as a quantum change in the level of custody—whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or

38

Appellate Case: 24-3596    Page: 45    Date Filed: 05/28/2025 Entry ID: 5521069

probation, or the run of the prison in contrast to the approximation to solitary confinement that is disciplinary segregation'") (citation omitted).

While the Eighth Circuit has not yet discussed this term and logic, many other federal circuits have either discussed or adopted it. *See, e.g., Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991) (leading case); *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 873 (1st Cir. 2010); *Ganim v. Fed. Bureau of Prisons*, 235 F. App'x 882, 884 (3d Cir. 2007) (no quantum change between two federal prisons with same security level, one in New York and one in New Jersey); *Plyler v. Moore*, 129 F.3d 728, 733 (4th Cir. 1997) ("although the Inmates do not challenge the validity of their convictions and sentences, but rather assert an entitlement to serve the last six months of their sentences on supervised furlough pursuant to § 24-13-720, the action is properly considered in **habeas** corpus.'); *Terrell v. United States*, 564 F.3d 442, 448 (6th Cir. 2009); *Fiorito v. Entzel*, 829 F.App'x 192, 193 (9th Cir. 2020) (citing *Graham*); *Misenar v. McKinna*, No. 99-1556, 2000 U.S. App. LEXIS 5213, at *3 (10th Cir. Mar. 28, 2000)

Rejecting the persuasive reasoning in the quantum change line of cases would impose arbitrary and formalistic restrictions on habeas corpus. Doing so would categorically deny habeas jurisdiction simply because some minimal administrative oversight remains, regardless of the meaningful practical differences in the prisoner's actual liberty. This would be wrong. The "quantum change"

39

rationale captures a legally and practically powerful rationale behind the Supreme Court's and the Circuit's prior cases. Rejecting this reasoning would gut the writ, undermine precedent, and put a technicality above the core of habeas.

d. Legislative Purpose and Judicial Economy Both Strongly Favor Resolving Mr. Fortner's Claim Via Habeas Corpus

Allowing prisoners such as Mr. Fortner to pursue ETC claims is also fully consistent with—and indeed necessary to effectuate—the legislative intent underlying the First Step Act. Further, habeas corpus is the only practical way to resolve these disputes—thereby significantly promoting judicial economy and promptly remedying statutory violations—aims that would be failed if traditional civil litigation were required.

The First Step Act, enacted with bipartisan support in 2018, represents Congress's clear commitment to reducing incarceration, promoting successful prisoner reentry into society, and incentivizing prisoners' productive behavior within the federal prison system. ETCs are expressly described as mandatory benefits prisoners "shall earn" upon successful participation in approved recidivism-reduction programs and productive activities. See 18 U.S.C. § 3632(d)(4). Through this langauge Congress unmistakably intended ETCs not as discretionary privileges, but as legally enforceable statutory entitlements. Congress explicitly tied ETCs to the most powerful incentive prisoners could have—their liberty. Undermining the incentives provided by the First Step Act would also

40

undermining the Act's core rehabilitative purposes, and achieving these purposes requires a reliable mechanism through which prisoners can promptly enforce their statutory rights if unlawfully denied.

ETC benefits lose their effectiveness entirely if delays, errors, or misinterpretations go unchecked by meaningful judicial review.  Further, if ETC claims are not timely resolved, they become mooted as the prisoner's sentence expires. This is problematic because civil litigation typically involves extensive discovery, motion practice, lengthy timelines, complex procedural requirements, and inevitably delayed judicial resolution. Further the remedy of Section 1983 violations—typically money—does not align with the remedy of ETC violations—release from confinement. That remedy is tied to habeas.

Habeas corpus, unlike traditional civil litigation, provides a streamlined procedural mechanism specifically designed for rapid adjudication of claims directly affecting prisoners' liberty interests. Habeas corpus petitions under 28 U.S.C. § 2241 offer prisoners generally faster access to review with lesser procedural complexity when compared to traditional civil litigation. District Courts can efficiently resolve habeas claims; promptly determining which claims are frivolous and which require further scrutiny and then handling each set of cases appropriately. Recognizing habeas corpus jurisdiction for ETC challenges not only

41

Appellate Case: 24-3596     Page: 48     Date Filed: 05/28/2025 Entry ID: 5521069

furthers congressional intent but significantly advances the judiciary's—and the petitioners'—interests in efficiency, economy, and practical dispute resolution.

A core principle underlying American jurisprudence is that—for every legally recognized right— there must exist a corresponding meaningful judicial remedy. As the Supreme Court notably articulated in *Marbury v. Madison*, 5 U.S. 137, 163 (1803):

> The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws whenever he receives an injury. … The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation if the laws furnish no remedy for the violation of a vested legal right.

*Id*.

This foundational principle ensures that individuals harmed by unlawful governmental actions possess effective and immediate access to judicial remedies. Fundamental fairness demands not only that a remedy exist, but also that it be timely, meaningful, and effective—especially when significant liberty interests are at stake. This too supports habeas corpus as not *an* appropriate remedy but *the only* appropriate way to address Mr. Fortner's grievance.

e. Equal Protection Principles Require Allowing Mr. Fortner's Claim to Proceed via Habeas Corpus

Finally, equal protection concerns press towards recognizing habeas jurisdiction over Mr. Fortner's ETC claim. Denying jurisdiction, as the District

42

Court erroneously did below, would create unjustifiable disparities in prisoners' substantive rights, resulting in arbitrary outcomes and unequal treatment based solely on the prisoner's geographic placement within the federal prison system. Such outcomes directly violate fundamental constitutional guarantees embodied in the Equal Protection component of the Fifth Amendment's Due Process Clause.

The ruling below—that ETC claims cannot proceed via habeas corpus within the Eighth Circuit, unlike similar claims permitted in other federal jurisdictions—creates precisely the kind of arbitrary, jurisdiction-based inequality that the Constitution forbids. Under the District Court's interpretation, a prisoner's ability to effectively challenge improper ETC calculation would depend solely upon the location of their federal incarceration, a factor entirely outside the prisoner's control.

Courts in other federal jurisdictions—as cited above—have already recognized habeas corpus as the appropriate vehicle for resolving ETC claims. In those jurisdictions, prisoners have direct access to prompt judicial remedies via habeas corpus. Conversely, prisoners incarcerated within other Districts—Minnesota so far—face an entirely different and significantly harsher procedural landscape, in which the very same claims cannot be promptly remedied through habeas corpus but instead must navigate burdensome and slow civil actions (if they can survive at all).

43

Appellate Case: 24-3596    Page: 50    Date Filed: 05/28/2025 Entry ID: 5521069

Such geographic disparities produce precisely the arbitrary and unequal outcomes condemned by the Equal Protection Clause. Prisoners in identical situations, alleging the same statutory violations involving the same federal statute, have substantively different procedural rights solely because of their prison's geographic location. Equal protection requires uniform application of federal statutory rights across jurisdictions, especially within a nationwide federal prison system governed by identical statutory mandates.

More troubling still, the geographic disparity produced by the District Court's ruling would allow—and potentially incentivize—arbitrary manipulation and abuse by the Bureau of Prisons (BOP). Specifically, the BOP alone controls where each federal prisoner serves their sentence. Under the District Court's ruling, Mr. Fortner received a different set of procedural and substantive rights because of the decision the BOP made to house him in Minnesota. Worse still, the BOP could effectively evade substantive judicial review of ETC calculations simply by placing prisoners who have made (or who they expect to make) ETC challenges within prisons located in jurisdictions where habeas jurisdiction is improperly denied. It permits the BOP to arbitrarily determine prisoners' rights merely through prison placement decisions—decisions entirely outside the control of both prisoners and the judiciary. Prisoners who win the placement "lottery" could challenge wrongful denials while prisoners who lose could not.

44

This outcome presents profound equal protection concerns under both traditional equal protection claims (*See, e.g., Domina v. Van Pelt*, 235 F.3d 1091, 1099 (8th Cir. 2000) (as Mr. Fortner is being treated differently than others who are similarly situated)) and under "class of one" type claims (*See, e.g.*, *Flowers v. City of Minneapolis*, 558 F.3d 794, 799 (8th Cir. 2009) ("intentionally treated differently from others similarly situated and there is no rational basis"). Arbitrary differences in procedure that produce unequal treatment of similarly situated individuals inherently offend constitutional fairness and equal protection guarantees.

The only constitutionally sound interpretation—consistent with equal protection—is recognizing habeas corpus jurisdiction for ETC claims uniformly across at least the Eighth Circuit. Such recognition ensures prisoners' rights—not least of which are Mr. Fortner's rights in this case—are equally enforced, predictable, and protected against arbitrary or discriminatory manipulation by the executive branch.

Appellate Case: 24-3596    Page: 52    Date Filed: 05/28/2025 Entry ID: 5521069

# Conclusion

The District Court erred by dismissing Mr. Fortner's habeas corpus petition for lack of jurisdiction. Supreme Court precedent, historical habeas principles, persuasive authority from multiple federal courts, and fundamental fairness uniformly require recognizing habeas corpus jurisdiction over his Earned Time Credit claim under the First Step Act.

Accordingly, Mr. Fortner respectfully requests this Court reverse the judgment below, explicitly affirm habeas corpus jurisdiction, and remand for prompt consideration of his claim on its merits.

Respectfully submitted,

Dated:   May 28, 2025

/s/ Ian S. Birrell
Ian S. Birrell (Attorney No. 0396379)
**Birrell Law Firm PLLC**
333 South 7th Street, Suite 3020
Minneapolis, MN 55402
Phone: (612) 238-1939
ian@birrell.law

*Attorney for Appellant*

46

# Certificate of Compliance

The undersigned attorney for Mr. Anthony Fortner certifies this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32. The brief has 10,406 words, proportionally spaced using Times New Roman, 14-point font (exclusive of cover page; disclosure statement; table of contents; table of authorities; statement regarding oral argument; addendum containing statutes, rules, or regulations; certificate of counsel; signature block; and proof of service). The brief was prepared using Word for Microsoft 365. The undersigned attorney also certifies that the brief has been scanned for viruses and, to the best of our ability and technology, believes it is virus-free.

Appellate Case: 24-3596    Page: 54    Date Filed: 05/28/2025 Entry ID: 5521069

# Certificate of Service

I hereby certify that on May 28, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users.  I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants: Anthony Fortner

Dated:   May 28, 2025

/s/ Ian S. Birrell
Ian S. Birrell (Attorney No. 0396379)
**Birrell Law Firm PLLC**
333 South 7th Street, Suite 3020
Minneapolis, MN 55402
Phone: (612) 238-1939
ian@birrell.law

*Attorney for Appellant*

48