No. 24-3596

# In the United States Court of Appeals
# For the Eighth Circuit

ANTHONY FORTNER,

Plaintiff-Appellant,

v.

B. EISCHEN, WARDEN, BUREAU OF PRISONS,

Defendant-Appellee.

*Appeal from the United States District Court
for the District of Minnesota*

## BRIEF OF DEFENDANT- APPELLEE

JOSEPH H. THOMPSON
  *Acting United States Attorney*
Lucas B. Draisey
  *Assistant U.S. Attorney*
U.S. Attorney's Office
District of Minnesota
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5600
Attorneys for Defendant-Appellee

Appellate Case: 24-3596    Page: 1    Date Filed: 06/27/2025 Entry ID: 5531870

# SUMMARY OF THE CASE

Appellant Anthony Fortner seeks relief that is not available in a habeas case, and the district court correctly dismissed his habeas petition. The U.S. Bureau of Prisons credited Fortner with 365 days of First Step Act ("FSA") time credits toward his early release—the statutory maximum number of credits that may be applied towards supervised release. *See* APP. 7, R. Doc. 1 at 2. Fortner's habeas petition seeks additional time credits he allegedly earned, which could only be applied towards prerelease custody—a different form of BOP custody. APP. 19, R. Doc. 1 at 14.

The district court correctly concluded Fortner's habeas petition does not challenge the fact or duration of his confinement but instead presents a conditions-of-confinement claim. This Court's precedents establish a bright-line rule: if a prisoner is not challenging the validity or length of his custody, the district court lacks the power to grant habeas relief. *See Spencer v. Haynes*, 774 F.3d 467, 469–70 (8th Cir. 2014); *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam). The bright line rule applies in this case, and the district court correctly dismissed Fortner's habeas petition.

Oral argument is not necessary to resolve this appeal.

i

Appellate Case: 24-3596     Page: 2     Date Filed: 06/27/2025 Entry ID: 5531870

# TABLE OF CONTENTS

SUMMARY OF THE CASE ................................................................................ i

TABLE OF AUTHORITIES ............................................................................ iv

JURISDICTIONAL STATEMENT ................................................................... 1

STATEMENT OF THE ISSUES ....................................................................... 2

STATEMENT OF THE CASE ........................................................................... 3

I.     Statutory Background ............................................................................ 3

II.    Fortner's Incarceration ......................................................................... 5

III.   Procedural History ................................................................................ 6

       A.    Fortner's Habeas Petition ........................................................... 6
       B.    The Magistrate Judge's Report and Recommendation ......... 7
       C.    The District Court's Order Adopting the R. & R. ................. 9

SUMMARY OF THE ARGUMENT ................................................................. 11

ARGUMENT ..................................................................................................... 12

I.     Standard of Review .............................................................................. 12

II.    The district court correctly held it lacked jurisdiction over
       Fortner's habeas petition challenging the place of his
       confinement ........................................................................................... 12

       A.    Fortner's challenge to the place of his confinement is not
             properly asserted in habeas. ..................................................... 12
       B.    The Court's decisions in *Elwood*, *Fults*, and *Miller* do not
             change the analysis. .................................................................... 16
       C.    Courts lack jurisdiction to review BOP's place-of-
             confinement decisions, including prerelease-custody
             designations. ................................................................................ 17
       D.    FSA time credits, unlike good time credits, do not entitle a
             prisoner to release ...................................................................... 20

Appellate Case: 24-3596     Page: 3     Date Filed: 06/27/2025 Entry ID: 5531870

E. Fortner's proposed "quantum change" test contradicts Circuit precedent and is inapplicable to prerelease custody...................................................................... 22

CONCLUSION ................................................................... 28

CERTIFICATE OF COMPLIANCE ..................................................... 29

Appellate Case: 24-3596    Page: 4    Date Filed: 06/27/2025 Entry ID: 5531870

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Singletary*, 111 F.3d 801 (11th Cir. 1997) ........................................25

*Brown v. Penders*, 101 F.4th 944 (1st Cir. 2024) ...................................................21

*Cook v. Hanberry*, 592 F.2d 248 (5th Cir. 1979) (per curiam) ...........................14

*Davis v. Fechtel*, 150 F.3d 486 (5th Cir. 1998) ......................................................25

*Davis v. Michigan Dept. of Treasury*, 489 U.S. 803 (1989)...................................19

*Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) ...........................13

*Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004)........................................................16

*Flowers v. Anderson*, 661 F.3d 977 (8th Cir. 2011) ..............................................12

*Fults v. Sanders*, 442 F.3d 1088, 1089 (8th Cir. 2006) .........................................16

*Graham v. Broglin*, 922 F.2d 379 (7th Cir. 1991) ......................................... 23, 24

*Johnson v. Birkholz*, No. 21 cv-2017, 2022 WL 3135304 (D. Minn. Aug. 5, 2022) ........................................................................................................7, 8

*Johnson v. Jones*, 340 F.3d 624 (8th Cir. 2003).......................................................8

*Jones v. Harris*, 339 F.2d 585 (8th Cir. 1965)................................................. 14, 26

*Khaimov v. Crist*, 297 F.3d 783 (8th Cir. 2002) ....................................................26

*Kruger v. Erickson*, 77 F.3d 1071 (8th Cir. 1996) (per curiam)................. passim

*Malave v. Hedrick*, 271 F.3d 1139 (8th Cir. 2001) (per curiam)........................25

*Maxwell v. Thomas*, 133 F.4th 453 (5th Cir. 2025)............................................2, 15

*Melot v. Bergami*, 970 F.3d 596 (5th Cir. 2020)...................................................15

iv

*Miller v. Whitehead*, 527 F.3d 752 (8th Cir. 2008) ...............................16

*Nelson v. Campbell*, 541 U.S. 637 (2004) ......................................13

*Palma-Salazar v. Davis*, 677 F.3d 1031 (10th Cir. 2012).......................14

*Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) .............................17

*Preiser v. Rodriguez*, 411 U.S. 475 (1973)......................................13

*Richmond v. Scibana*, 387 F.3d 602 (7th Cir. 2004)................................14

*Robinson v. Sherrod*, 631 F.3d 839 (7th Cir. 2011)...............................28

*Spencer v. Haynes*, 774 F.3d 467 (8th Cir. 2014)..........................passim

**Federal Statutes**

18 U.S.C. § 3621............................................................passim

18 U.S.C. § 3624............................................................passim

18 U.S.C. § 3625................................................................8

18 U.S.C. § 3632.............................................................9, 10

28 U.S.C. § 1291...............................................................6

28 U.S.C. § 2241..................................................... 11, 17, 18, 30

42 U.S.C. § 1997e.............................................................13

Comprehensive Crime Control Act of 1984, Pub. L. 98–473, 98 Stat. 1837 (Oct. 12, 1984)............................................................23

First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (Dec. 21, 2018).......9, 24

Second Chance Act of 2007, Pub. L. 110–199, 122 Stat. 657 (Apr. 9, 2008)....23

Appellate Case: 24-3596    Page: 6    Date Filed: 06/27/2025 Entry ID: 5531870

**Federal Rules**

Fed. R. App. P. 4 ..............................................................................................6

**Other Authorities**

Paul Walsh, *2 multimillion-dollar fraudsters escape from federal prison near Duluth*, The Minnesota Star Tribune (Apr. 5, 2013) https://www.startribune.com/2-multimillion-dollar-fraudsters-escape-from-federal-prison-near-duluth/200783591 ..............................................32

Appellate Case: 24-3596    Page: 7    Date Filed: 06/27/2025 Entry ID: 5531870

# JURISDICTIONAL STATEMENT

The district court correctly dismissed Fortner's habeas petition for lack of subject-matter jurisdiction. The judgment issued on December 2, 2024. Add. 19, APP. 74, R. Doc. 19. Fortner timely filed his notice of appeal on December 20, 2024. APP. 75, R. Doc. 20; *see* Fed. R. App. P. 4(a)(1)(B). This Court therefore has appellate jurisdiction over the appeal from that final decision. 28 U.S.C. § 1291.

1

Appellate Case: 24-3596   Page: 8   Date Filed: 06/27/2025 Entry ID: 5531870

## STATEMENT OF THE ISSUES

I.    Did the district court correctly dismiss Fortner's habeas petition?

- 18 U.S.C. § 3621(b)

- 18 U.S.C. § 3624(g)

- *Spencer v. Haynes*, 774 F.3d 467 (8th Cir. 2014)

- *Kruger v. Erickson*, 185 F.3d 467 (8th Cir. 1996)

- *Maxwell v. Thomas*, 133 F.4th 453 (5th Cir. 2025)

2

Appellate Case: 24-3596    Page: 9    Date Filed: 06/27/2025 Entry ID: 5531870

## I.    Statutory Background

Congress charges the Bureau of Prisons with custody of federal criminal defendants sentenced to prison. 18 U.S.C. § 3621(a). BOP's custody lasts "until the expiration of the term imposed, or until earlier released for satisfactory behavior." *Id.* A prisoner is released from BOP's custody "on the date of expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence" for good behavior, through a system known as "good-time credits." *Id.* § 3624(a), (b).

While BOP maintains custody, the Bureau enjoys unreviewable discretion regarding where to "designat[e]" a prisoner's "place of imprisonment." *Id.* § 3621(b) ("Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."); *see also id.* § 3625 (prohibiting APA review of BOP placement decisions). Congress has passed various statutes empowering BOP to designate prisoners to custodial settings outside of secure facilities to help transition inmates to life after prison. The BOP therefore offers access to "prerelease custody." 18 U.S.C. § 3624(c), (g). Prerelease custody consists of placement in home confinement or in a

3

residential re-entry center ("RRC," more commonly known as a halfway house). *Id.*

Congress later enacted the First Step Act of 2018 (the "FSA"), in part to encourage recidivism reduction among the incarcerated population. Pub. L. 115-391, title I, 132 Stat. 5194, 5195 (Dec. 21, 2018) (codified at 18 U.S.C. §§ 3621, *et seq.*). The new law directed the Attorney General to develop a risk and needs assessment system no later than July 19, 2019. 18 U.S.C. § 3632(a). The BOP uses the risk tool to determine the recidivism risk and classify each inmate as having a minimum, low, medium, or high risk of recidivism. *Id.* § 3632(a)(1). It uses the criminogenic needs assessment tool to determine the type of evidence-based recidivism reduction ("EBRR") programming appropriate for each inmate. *Id.* § 3632(a)(3).

Congress created a new system of FSA "time credits," or FTCs, to encourage inmates to participate in and complete programming. *Id.* § 3632(d)(4). Eligible prisoners "who successfully complete" programming "shall earn time credits" at a rate of ten days for every thirty days of successful participation in EBRR, or fifteen days per thirty days of successful participation if they maintain a minimal or low risk of recidivism over two consecutive assessments. *Id.* § 3632(d)(4)(A).

4

Once earned, eligible prisoners may have their FSA time credits applied once they have earned an amount equal to their remaining sentence. *Id.* § 3624(g)(1). One important benefit of FSA time credits is that they may be applied either "toward time in prerelease custody or supervised release." *Id.* § 3632(d)(4)(C). The statute limits FTCs applied towards supervised release to just twelve months. *Id.* § 3624(g)(3). Beyond those twelve months, credits may only apply towards prerelease custody in an RRC or in home confinement. *Id.* § 3624(g)(2).

## II. Fortner's Incarceration

Appellant Anthony Fortner is serving a term of term of imprisonment in the minimum-security Federal Prison Camp in Duluth, Minnesota ("FPC Duluth"). APP. 17, R. Doc. 1 at 12. Before arriving at FPC Duluth, Fortner "was kept in Texas" for more than a year "on writ," where he "worked fulltime in the kitchen, engaging in 'productive activities' in accordance with the First Step Act." *Id.*

BOP projects Fortner will be released from prison on June 22, 2028. APP. 17–18, R. Doc. 1 at 12–13. According to Fortner's petition, that projected release date includes Fortner's good-time credit "adjusted outdate of 6-22-2029, and an FSA adjusted outdate, 365 days earlier, of 6-22-2028." APP. 18,

Appellate Case: 24-3596    Page: 12    Date Filed: 06/27/2025 Entry ID: 5531870

R. Doc. 1 at 13. The release date thus accounts for the statutory maximum 365 days of FSA time credits that Fortner can apply towards supervised release under 18 U.S.C. § 3624(g)(3), but it does not include any FSA time credits Fortner has earned towards prerelease custody.[1] *Id.*

## III. Procedural History

### A. Fortner's Habeas Petition

Fortner petitioned for habeas corpus under 28 U.S.C. § 2241 in April 2024, seeking to "adjust [his] sentence and correct his prerelease custody outdate." APP. 11, R. Doc. 1. Fortner raised three interrelated arguments. First, he contended that BOP improperly denied him FSA time credits he earned while being held in Texas "on writ." APP. 12, R. Doc. 1 at 7. Second, he asserted BOP wrongfully capped his FSA time credits at 365 days when calculating his projected release date. APP. 12–13, R. Doc. 1 at 7–8. And third,

---

[1] Though it's not apparent from Fortner's petition, the additional FSA time credits over and above the 365 days a prisoner is projected to earn and apply towards supervised release are not wasted. Instead, they are accounted for separately in a prisoner's projected "RRC/HC placement date," which advances the date on which BOP refers a prisoner for prerelease custody. Fed. Bureau of Prisons, Program Statement No. 5410.01, *First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)* at 16, available at https://www.bop.gov/policy/progstat/5410.01_cn2.pdf (Nov. 18, 2022).

6

he maintained BOP's projection of his release date failed to account for all the time credits he may earn during his sentence. APP. 13, R. Doc. 1 at 8.

### B. The Magistrate Judge's Report and Recommendation

The Magistrate Judge screened Fortner's petition under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. Add. 3, APP. 34, R. Doc. 6. The Court explained that habeas jurisdiction is limited to petitioners challenging the fact or duration of their sentences and does not extend to those seeking a transfer to a more desirable custodial setting. Add. 4, APP. 35, R. Doc. 6 at 2 (quoting *Johnson v. Birkholz*, No. 21 cv-2017, 2022 WL 3135304, at *1 (D. Minn. Aug. 5, 2022)). Because Fortner alleged only that he was denied a transfer to prerelease custody, the Court ordered Fortner to show cause why his petition should not be dismissed for lack of jurisdiction. Add. 5, APP. 36, R. Doc. 6 at 3. Fortner responded to the order to show cause, APP. 4, R. Doc. 7, but failed to convince the Magistrate Judge.

The Magistrate Judge recommended dismissing Fortner's habeas petition in a July 2024 Report and Recommendation. Add. 6, APP. 37, R. Doc. 11. Relying on the district's leading case on the topic, the Magistrate Judge concluded Fortner's habeas petition did not attack the fact or duration of his

7

custody but instead challenged the conditions of his confinement. Add. 8, APP. 39, R. Doc. 11 at 3 (quoting *Johnson*, 2022 WL 3135304, at *1). "Even if the present habeas Petition were to be granted in full," the Magistrate Judge observed, Fortner "would not spend even a minute less in the custody of the BOP than he is currently scheduled to spend—he would only spend more of that period of BOP detention in prerelease custody." *Id.* As a result, the Eighth Circuit's case law required Fortner's claim "must be raised through traditional non-habeas civil litigation." Add. 9, APP. 40, R. Doc. 11 at 4 (citing *Spencer v. Haynes*, 774 F.3d 467, at 469–71 (8th Cir. 2014)).

The Magistrate Judge also considered whether Fortner's "claim may be reinterpreted into the correct procedural vehicle." *Id.* But doing so, the Magistrate Judge concluded, "would likely do [Fortner] little good—indeed, it would only cost him money." Add. 9–10, APP. 40–41, R. Doc. 11 at 4–5. Because the Prison Litigation Reform Act requires prisoners to exhaust administrative remedies—a process Fortner had not yet completed—his petition would be subjected to mandatory dismissal. Add. 10, APP. 41, R. Doc. 11 at 5 (citing 42 U.S.C. § 1997e(a) and quoting *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003)). And because a prisoner bringing a non-habeas civil action must pay the entire filing fee, the Magistrate Judge concluded

8

reinterpreting Fortner's habeas petition would mean dismissing his claim "while charging him for the privilege." *Id.*

### C. The District Court's Order Adopting the R. & R.

The district court agreed and adopted the R. & R. over Fortner's objections. Add. 12, APP. 67, R. Doc. 18. Reviewing the R. & R. *de novo*, the district court concluded it lacked subject-matter jurisdiction. Add. 16, APP. 71, R. Doc. 18 at 5. "Here, Fortner does not contend he is eligible for early release from BOP custody." *Id.* Instead, the district court found he argued "only that the characterization of that custody—from a prison setting to prerelease custody—should be changed earlier because of his accrual of FTCs." *Id.* Applying Eighth Circuit precedent, the district court held that Fortner's conditions-of-confinement claim could not proceed via habeas. *Id.*

The district court also considered the Magistrate Judge's recommendation to dismiss rather than recast Fortner's petition. *Id.* Like the Magistrate Judge, the district court concluded that, "if the Court were to recharacterize the habeas petition, it would have to dismiss the resulting civil case for failure to exhaust administrative remedies." *Id.* The district court instead ordered Fortner's petition dismissed without prejudice to give

9

him the opportunity "to refile his claims as a civil action after exhausting all administrative remedies." Add. 17, APP. 72, R. Doc. 18 at 6.

Appellate Case: 24-3596    Page: 17    Date Filed: 06/27/2025 Entry ID: 5531870

## SUMMARY OF THE ARGUMENT

The district court correctly dismissed the habeas petition seeking a transfer to a less restrictive custodial setting. Habeas relief is limited to prisoners "challenging the validity of his conviction or the length of his detention." *Spencer v. Haynes*, 774 F.3d 467, 469 (8th Cir. 2014) (quoting *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam)). This is a bright-line rule: "If the prisoner is not challenging the validity of his conviction or the length of his detention, such as a loss of good time, then a writ of habeas corpus is not the proper remedy." *Kruger*, 77 F.3d at 1073. That bright-line rule applies in this case.

Fortner does not challenge the legality of his confinement but instead seeks a transfer to a less restrictive custodial setting. The habeas petition, Fortner concedes, seeks transfer to prerelease custody—a "different and less restrictive form of custody" than his current designation at FPC Duluth. Appellant's Br. at 30. Because seeking a transfer to a less restrictive custodial setting does not attack the fact or duration of custody, the Court should affirm the district court's judgment dismissing Fortner's habeas petition.

11

## ARGUMENT

### I. Standard of Review

The Court reviews *de novo* a district court's dismissal of a habeas petition under 28 U.S.C. § 2241. *Spencer*, 774 F.3d at 469 (quoting *Flowers v. Anderson*, 661 F.3d 977, 980 (8th Cir. 2011)).

### II. The district court correctly held it lacked jurisdiction over Fortner's habeas petition challenging the place of his confinement.

The district court lacked subject-matter jurisdiction to hear Fortner's petition seeking a transfer to prerelease custody and correctly dismissed it. Under binding Eighth Circuit precedent, habeas review is available only when prisoners challenge the fact or length of their confinement, and a habeas petition is not the proper vehicle for challenging the conditions or place of a prisoner's custody. *Spencer*, 774 F.3d at 469–70; *Kruger*, 77 F.3d at 1073. What's more, Congress has plainly deprived courts of subject-matter jurisdiction to adjudicate place-of-confinement claims. The district court therefore correctly dismissed Fortner's claim.

#### A. Fortner's challenge to the place of his confinement is not properly asserted in habeas.

Congress limited the district courts' authority to grant habeas relief in 28 U.S.C. § 2241(c). "The writ of habeas corpus shall not extend to a prisoner

12

Appellate Case: 24-3596   Page: 19   Date Filed: 06/27/2025 Entry ID: 5531870

unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States," among other avenues not relevant here. 28 U.S.C. § 2241(c)(3). The Supreme Court considered this language and "the common-law history of the writ" in *Preiser v. Rodriguez*, 411 U.S. 475, 484–87 (1973). "[T]he essence of habeas corpus," the Court explained, "is an attack by a person in custody upon the legality of that custody" for the purpose of "secur[ing] release from illegal custody." *Id.* at 484. A prisoner challenging the fact or length of his confinement must do so through a habeas petition, not a civil rights lawsuit. *Id.* at 499. Conversely, claims seeking relief beyond the core of the writ must be brought through non-habeas, civil litigation. *Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 119 (2020); *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). Fortner's claim falls on the non-habeas side of the line.

The Eight Circuit has adopted a bright-line rule for distinguishing habeas from non-habeas cases. The writ is unavailable to prisoners who do not challenge the fact or length of their confinement. *Spencer*, 774 F.3d at 470–71. Absent a proper attack on the length or validity of a prisoner's custody, "the district court lacks the power or subject matter jurisdiction to issue a writ." *Kruger*, 77 F.3d at 1073. This limitation on habeas relief applies to

13

claims seeking a transfer from one form of BOP custody to another. *Jones v. Harris*, 339 F.2d 585, 586 (8th Cir. 1965) (affirming dismissal of habeas petition challenging prisoner's transfer from Alcatraz to the federal medical center in Springfield, Missouri)); *see also Spencer*, 774 F.3d at 471 (favorably citing *Cook v. Hanberry*, 592 F.2d 248, 248 (5th Cir. 1979) (per curiam)); *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035–36 (10th Cir. 2012) (holding petition challenging prisoner's transfer to maximum security prison cannot be brought under § 2241); *Richmond v. Scibana*, 387 F.3d 602, 605–06 (7th Cir. 2004) (dismissing habeas petition challenging BOP regulation limiting community confinement). The bright-line rule precludes Fortner's habeas petition challenging the place and conditions of his confinement.

Fortner challenges the place of his confinement, not its fact or length, and he doesn't suggest otherwise. Placement in prerelease custody, he concedes, is merely "a different and less restrictive form of custody." Appellant's Br. at 30. His habeas petition recognized that BOP accounted for 365 days of FSA time credits towards earlier supervised release. APP. 13, R. Doc. 1 at 8. He asked the district court instead to "correct his prerelease custody outdate," not to order his immediate or earlier release. APP. 11, R. Doc. 1 at 6. His requested relief—transfer from one custodial setting to a

14

different, less restrictive form of confinement—falls outside the core of habeas relief and would alter only the place and conditions of his continued custody, not its fact or duration. The district court therefore correctly concluded that it lacked the authority to issue a writ of habeas corpus to place Fortner in a different custodial setting.

The district court's analysis aligns with the Fifth Circuit's recent decision in *Maxwell v. Thomas*, 133 F.4th 453, 454 (5th Cir. 2025) (per curiam).[2] Like Fortner, the habeas petitioner in *Maxwell* sought "transfer to a halfway house or home confinement" under the FSA. *Id.* But the Fifth Circuit's "bright-line rule" required habeas petitioners to do more than challenge the conditions of confinement; they must seek "accelerated release" from custody. *Id.* (quoting *Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020)). "[T]he nature of [the petitioner's] requested relief," the court wrote, would not "entitle him to accelerated release, so the relief he seeks is properly brought in a civil rights suit." *Id.* This case requires the same result.

---

[2] *Maxwell* is the only published appellate decision the government found addressing whether a habeas petitioner seeking earlier transfer to prerelease custody under the FSA presents a cognizable habeas claim.

15

This Court has articulated the jurisdictional bar as a bright-line rule: "If the prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy." *Kruger*, 77 F.3d at 1073. The Court should reach the same conclusion as the Fifth Circuit and affirm dismissal for lack of habeas jurisdiction.

**B.    The Court's decisions in *Elwood*, *Fults*, and *Miller* do not change the analysis.**

*Kruger* and *Spencer* apply here, notwithstanding three cases—all decided after *Kruger* but before *Spencer*—addressing the merits of prisoners' habeas claims. Fortner cites *Miller v. Whitehead* to show this Court has addressed similar place-of-confinement claims in habeas petitions before. Appellant's Br. at 17 (citing *Miller*, 527 F.3d 752 (8th Cir. 2008)). The Court in *Miller* followed and relied on two earlier cases that did the same. *Miller*, 527 F.3d 752, 755–56 (citing *Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004) and *Fults v. Sanders*, 442 F.3d 1088, 1089 (8th Cir. 2006)). None of those three other decisions addressed the jurisdictional question, and none contains a holding conflicting with *Kruger* or *Spencer*.

16

Appellate Case: 24-3596    Page: 23    Date Filed: 06/27/2025 Entry ID: 5531870

Silence on subject-matter jurisdiction does not amount to a holding that jurisdiction is present. *See Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119 (1984) (holding earlier decisions "did not directly confront the [jurisdictional] question" and "therefore we view the question as an open one"). None of the Court's decisions in the *Elwood–Miller* cases contain a holding on subject-matter jurisdiction. The Court remains bound by the bright-line rule in *Kruger*, holding conditions-of-confinement claims may not be raised through habeas petitions. *Spencer*, 774 F.3d at 470. The Court should therefore affirm the judgment.

## C. Courts lack jurisdiction to review BOP's place-of-confinement decisions, including prerelease-custody designations.

The district court's dismissal is equally supported by plain statutory text insulating BOP's place-of-confinement decisions from judicial review. Congress granted the BOP unreviewable discretion when designating prisoners' place of imprisonment. 18 U.S.C. § 3621(b). And because transferring a prisoner to prerelease custody is a place-of-imprisonment designation, that unreviewable discretion applies to BOP's prerelease custody determinations under the FSA.

17

Congress has limited the availability of judicial review of BOP's designation decisions. "Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." 18 U.S.C. § 3621(b). This authority expressly extends to prerelease-custody decisions under § 3624(c)(4), and this Court has recognized that district courts lack authority to change a prisoner's "place of imprisonment to home confinement under § 3624(c)." *United States v. Houck*, 2 F.4th 1082, 1085 (8th Cir. 2021).

The same analysis applies to the FSA's prerelease-custody provisions in § 3624(g). Congress passed the FSA against the backdrop of an existing statutory framework that has for decades authorized the BOP to designate prisoners' place of imprisonment, including to prerelease custody. *See* Comprehensive Crime Control Act of 1984, Pub. L. 98–473, title II, ch. II, § 212(a)(2), 98 Stat. 1837, 2009 (Oct. 12, 1984) (codifying 18 U.S.C. §§ 3621, 3624(c)). Congress expanded that authority when it passed the Second Chance Act of 2007, making clear that paragraph's prerelease-custody provision does not "limit or restrict the authority of the Director of the Bureau of Prisons under section 3621." Pub. L. 110–199, title II, ch. 3, § 251(a), 122 Stat. 657, 693 (Apr. 9, 2008) (codified at 18 U.S.C. § 3624(c)(4)).

18

This provision plainly shows BOP's prerelease-custody decisions under § 3624(c) are subject to its discretion to designate a prisoner's place of imprisonment. Then, in the FSA itself, Congress amended § 3621(b) to add: "Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." Pub. L. 115-391, title VI, § 601(1), 132 Stat. 5194, 5237 (Dec. 21, 2018).

Prerelease-custody designations under § 3624(g) are no different than those made under § 3624(c), and the Court should read the two provisions together. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989). The FSA's prerelease custody provision in § 3624(g) is part of a broader statutory scheme requiring BOP to conduct a discretionary analysis before placing a prisoner in prerelease custody. 18 U.S.C. § 3621(b). The similar prerelease-custody provision in § 3624(c) is expressly subject to that discretion. *Id.* § 3624(c)(4). The two prerelease-custody provisions are both part of the same statutory section. *Id.* §§ 3624(c), (g). And they both cover the same subject matter: prisoner designations to RRC or home confinement. *Id.* The Court should read the FSA's prerelease-custody provisions in § 3624(g)

in light of Congress's express intent in the FSA itself to shield prerelease-custody designations under § 3624(c) from judicial scrutiny.

Placing an inmate in rerelease custody, whether in home confinement or in an RRC, is a place-of-imprisonment designation insulated from review. Read together, the two prerelease-custody provisions in § 3624 show Congress intended to shield prerelease-custody placements from judicial review. The Court should affirm the district court's judgment dismissing Fortner's petition seeking an earlier designation to prerelease custody.

### D. FSA time credits, unlike good time credits, do not entitle a prisoner to release.

The Court should reject Fortner's comparison between good time credits. The two time-credit systems are fundamentally different: good-time credits advance a prisoner's release from custody, while FSA time credits do not. This distinction is dispositive, given the bright-line rule in the Eighth Circuit limiting habeas review to claims challenging the length or validity of an inmate's confinement.

The relevant difference between good-time credits and FSA time credits is evident from statutory text. A prisoner is "committed to the custody of the Bureau of Prisons until the expiration of the term [of

20

imprisonment] imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624." 18 U.S.C. § 3621(a). Section 3624, in turn, states that a prisoner is "released . . . on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence as provided in subsection (b)," which creates the system of time credits known as "good time" credits. 18 U.S.C. § 3624(a), (b). As a result, a prisoner may apply good-time credits toward his earlier release from custody.

In the context of prerelease custody, by contrast, the FSA time credits authorized in § 3624(g) do not advance a prisoner's release from custody. *Brown v. Penders*, 101 F.4th 944, 946 (1st Cir. 2024) (recognizing prerelease custody under § 3624(c) and (g) "is distinct from the 'release[] for satisfactory behavior' provisions § 3621(a) refers to, which exist at § 3624(b)."). The plain text of subsection (g) reinforces that prerelease custody is just another, less restrictive form of custody and is unlike release from custody altogether. Congress used the term "*pre*release custody" to describe placement in home confinement and RRCs and the word "prisoner" to describe the people placed there. 18 U.S.C. § 3624(g). The statute imposes prison-like conditions on those in prerelease custody, like 24-hour electronic monitoring, and

21

subjects them to "such other conditions as the [BOP's] Director determines appropriate." *Id.* § 3624(g)(A)(i)(I), (III), (B). This text shows Congress's intent that prerelease custody is a custodial setting preceding a prisoner's release from custody and is not equivalent to a release from custody.

The Court should decline to analogize FSA time credits to good-time credits. Good-time credits advance a prisoner's release from custody, while FSA time credits applied toward prerelease custody allow a prisoner to be placed in a less-restrictive, but indisputably custodial, setting before release affecting only the place and conditions of the prisoner's continued confinement.

### E. Fortner's proposed "quantum change" test contradicts Circuit precedent and is inapplicable to prerelease custody.

Fortner's focus on his location behind "prison walls" cannot transform his place-of-confinement claim into an attack on the fact or duration of his custody. insists his petition challenges the fact, not the conditions, of his confinement because prerelease custody is served "out of prison walls" instead of "within the prison walls." *E.g.*, Appellant's Br. at 30. Borrowing from other circuits, Fortner characterizes his requested relief as a "'quantum change' in custody" enabling prisoners to challenge certain conditions of

22

confinement. *Id.* at 36, 39. The "quantum change" analysis does not apply to prerelease custody claims and conflicts with this Circuit's precedent

The "quantum change" analysis Fortner proposes conflicts with the Circuit's existing bright-line rule. *Spencer*, 774 F.3d at 469–70 (quoting *Kruger*, 77 F.3d at 1073). In *Spencer*, the Court reiterated *Kruger*'s "if-then" test—"if the prisoner is not challenging the validity of his conviction or the length of his detention, . . . then a writ of habeas corpus is not the proper remedy"—and explained the petitioner's "claim relate[d] to the conditions of his confinement" and habeas was therefore "not the proper claim to remedy his alleged injury." *Id.* Fortner would have the Court instead entertain some place- and conditions-of-confinement habeas claims, depending on whether the petitioner seeks "significantly less restrictive custodial conditions." Appellant's Br. at 36. The Eighth Circuit has never adopted a "quantum change" test, and it should not do so here.

What's more, those circuits to have applied a quantum-change test would not apply it to prerelease custody placements. The quantum-change approach began with *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991) (Posner, J.). There, the Seventh Circuit confronted whether a state prisoner could seek work-release through a habeas petition and concluded he could

23

not. *Id.* In reaching that result, the court recognized the prisoner's claim was one of "[t]he difficult intermediate case[s] . . . where the prisoner is seeking not earlier freedom, but transfer from a more to a less restrictive form of custody." *Id.* Relevant to this case, the Seventh Circuit compared work release to home confinement, discussing and agreeing with cases from the Third Circuit holding "that a claim to be entitled to home furlough is a civil rights claim, not a habeas claim, because if successful it would merely change the location where the prisoner's sentence is to be served." *Id.* Though "a quantum change in the level of custody," like "bond or parole or probation," gives rise to habeas relief, the court distinguished those changes in the level of custody from placement in home confinement. *Id.* ("[H]ome is a less restrictive place in which to serve once's sentence as well as a different one.") As the *Graham* case shows, prerelease custody under the FSA represents the type of place-of-confinement claim that does not represent a quantum change in the level of custody.

Regardless, the Court's existing bright-line rule from *Kruger* and *Spencer* is better than a quantum-change test for three reasons.

*First,* a bright-line rule finds support in the text of the habeas statute and the common law history of the writ. Congress prohibited habeas relief

24

"to a prisoner unless . . . [h]e is in custody in violation of" federal law. 28 U.S.C. § 2241(c)(3). By phrasing the statute in the negative, Congress conveyed a limitation on federal courts' habeas jurisdiction, not a broad extension of that jurisdiction to challenge any alleged violation of the law contemporaneous with custody. *See Preiser*, 411 U.S. at 484 (explaining the "traditional function of the writ . . . is to secure release from illegal custody."). A habeas petitioner who, like Fortner, challenges only the place or conditions of his otherwise lawful custody is not "in custody in violation of" the law within the meaning of the habeas corpus statute.

*Second*, requiring an attack on unlawful custody itself, and not the incidental conditions of that custody, accords with the broader statutory context surrounding prisoner litigation. The Prison Litigation Reform Act of 1995, this Court has said, does not apply to habeas litigation. *Malave v. Hedrick*, 271 F.3d 1139, 1139–40 (8th Cir. 2001) (per curiam). Habeas litigation is different than "conditions litigation" because it "involve[s] someone's liberty, rather than mere civil liability." *Id.* (citing *Anderson v. Singletary*, 111 F.3d 801, 805 (11th Cir. 1997) and quoting *Davis v. Fechtel*, 150 F.3d 486, 490 (5th Cir. 1998)). The bright-line rule recognizes the distinction between habeas and non-habeas litigation therefore gives greater effect to the PLRA

25

by ensuring only true habeas petitions challenging can evade its requirements.

And *third*, the vague and inexact quantum-change test is less judicially administrable, leading to arbitrary results. Virtually every place- or conditions-of-confinement habeas petitioner will seek substantially less restrictive conditions that could amount to a quantum change in the level of custody. So where should courts draw the line? When the petitioner in *Spencer* was placed in four-point restraints, did he experience a "quantum change" in his custody compared to the relative freedom of movement he previously enjoyed within his cell? *See Spencer*, 774 F.3d at 469. What about the petitioner in *Khaimov v. Crist*, whose habeas petition challenged his placement in segregated housing instead of general population? *See* 297 F.3d 783, 785 (8th Cir. 2002) (holding "being put in the segregation unit" is not a "proper claim[] for a habeas corpus petition"). What about the prisoner in *Jones* who sought a transfer from one prison facility to another? *See* 339 F.2d at 586 (affirming dismissal of habeas petition that "makes no attack upon the validity of [petitioner's] conviction . . . or the resulting sentence imposed" but challenges only his placement in a federal medical center). All these

26

prisoners sought substantially less restrictive custodial conditions, yet none could do so through habeas.

Fortner's claim is no different than any other seeking more favorable prison conditions. His insistence that he seeks transfer beyond the prison walls is no distinction. FPC Duluth is a minimum-security prison that notably has no perimeter walls.[3] If Fortner were transferred to prerelease custody, he would be just as confined within the walls of a halfway house or his home—the only difference is he expects the conditions of that confinement to be more agreeable. There is no principled distinction between Fortner's conditions-of-confinement claim and those of the petitioners in *Spencer*, *Khaimov*, and *Jones* justifying a "quantum-change" exception to the general prohibition against conditions-of-confinement habeas claims.

Fortner does not challenge the fact or length of his custody, and habeas relief is therefore not available. The Court should affirm the district court's

---

[3] Paul Walsh, *2 multimillion-dollar fraudsters escape from federal prison near Duluth*, The Minnesota Star Tribune (Apr. 5, 2013) https://www.startribune.com/2-multimillion-dollar-fraudsters-escape-from-federal-prison-near-duluth/200783591 (quoting a U.S. Marshals spokesperson who stated the escapees were "pretty much there on the honor system" because "[t]here aren't even any walls").

27

holding that Fortner's habeas petition is not the proper vehicle for his claim seeking placement in prerelease custody.

### III. The district court did not err by declining to reconstrue Fortner's habeas petition as an APA claim.

The district court correctly declined to recharacterize Fortner's habeas petition as an unexhausted APA claim. Fortner does not challenge this aspect of the district court's ruling, and the Court should not revisit it.

Regardless, the Court in *Spencer* approved of dismissing an improperly brought habeas petition without prejudice. After concluding the prisoner's claim could not give rise to habeas relief, the Court "approve[d] the Seventh Circuit's wisdom," citing a case in which that court affirmed dismissing without prejudice an unexhausted habeas petition under these circumstances. *Spencer*, 774 F.3d at 471 (citing *Robinson v. Sherrod*, 631 F.3d 839 (7th Cir. 2011)). The district court here followed "the Seventh Circuit wisdom" and declined to charge a filing fee only to dismiss Fortner's unexhausted claim under a different legal theory.

### CONCLUSION

For all these reasons, the Court should affirm the district court's judgment.

28

# CERTIFICATE OF COMPLIANCE

The undersigned attorney for the United States certifies this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32. The brief has 5,314 words, proportionally spaced using Book Antiqua, 14-point font. The brief was prepared using Microsoft Word 365. The undersigned attorney also certifies that the brief has been scanned for viruses and, to the best of our ability and technology, believes it is virus-free.

Dated:  June 27, 2025

JOSEPH H. THOMPSON
*Acting United States Attorney*

*/s/ Lucas B. Draisey*
Lucas B. Draisey
*Assistant U.S. Attorney*
U.S. Attorney's Office
District of Minnesota
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5600
Attorneys for Defendant-Appellee

Appellate Case: 24-3596     Page: 36     Date Filed: 06/27/2025 Entry ID: 5531870